The STATE of Texas, Appellant,

v.

THIRTY THOUSAND SIX HUNDRED SIXTY DOLLARS AND NO/100 ($30,-660.00) in U.S. Currency, Appellee.

No. 13–99–822–CV.

Court of Appeals of Texas, Corpus Christi–Edinburg.

May 20, 2004.

S. Kyle Duncan, Asst. Sol. Gen., and Thomas J. Patterson, Attorney General's Office, Austin, for Appellant.

G. Rudolph Garza, Jr., Attorney At Law, Corpus Christi, for Appellee.

## OPINION

Opinion by Justice GARZA.

This is an appeal from the dismissal of a civil forfeiture proceeding. $30,660 in United States currency was seized from the possession of Christopher Tobin by a Corpus Christi police officer following a routine traffic stop. The State subsequently filed this forfeiture action. On Tobin's motion, the trial court suppressed the currency, ordered it returned to Tobin, and dismissed the case, concluding that it lacked jurisdiction to hold a forfeiture proceeding without the subject of the forfeiture before it. On appeal, the State raises the following three issues: (1) Did the officer properly detain Tobin based on a reasonable suspicion that Tobin was driving while intoxicated or engaged in drug activity? (2) Did the officer properly search Tobin's automobile based on probable cause that there were drugs inside the automobile? (3) Even assuming that the detention and search were illegal, did the trial court err in dismissing the State's forfeiture action for lack of jurisdiction? Without reaching the trial court's ruling on the motion to suppress, we overrule all three issues and affirm the court's order returning the currency to Tobin and dismissing the case.

## I. Background

No live testimony was offered by either party at the hearing on Tobin's motion to suppress and for return of the currency. Instead, the parties relied solely on the deposition testimony of Officer Raymund Hullum, which reveals the following undisputed facts. On September 5, 1998, at approximately 11:15 p.m., Hullum clocked Tobin driving 55 m.p.h. in a 35 m.p.h. zone and initiated a traffic stop. Tobin pulled over promptly and showed the officer a valid driver's license and proof of insurance. Hullum noticed that Tobin's eyes were bloodshot. He took Tobin's license and returned to his squad car, where he wrote Tobin a ticket for speeding and checked his criminal record. He discovered that Tobin had been arrested for a drug offense in 1995 and that he was listed as having been a suspect in a possession of marihuana case in June of 1998. There were no outstanding warrants for his arrest. Hullum returned to Tobin's vehicle and issued him the speeding ticket, which Tobin signed.

Hullum then asked Tobin to step out of the vehicle. He immediately frisked Tobin for weapons, reasoning that his safety was in jeopardy because he was alone with a suspect after dark. He felt a bulge in the left front pocket of Tobin's pants and asked what it was. Tobin explained that it was money. When asked how much money it was, Tobin said it was about a thousand dollars. As Hullum continued his patdown, he noticed the smell of burnt marihuana coming from Tobin's person.

The officer decided to check Tobin's sobriety because "[there were] a lot of drunk drivers around that part of town just going home or whatever from the different clubs." He used the horizontal gaze nystagmus test, which Tobin passed. According to Hullum, there was no reason to administer any additional tests because he was satisfied that Tobin was not intoxicated.

Hullum asked Tobin if he had any drugs or weapons in his vehicle. Tobin said no. The officer then requested permission to search the vehicle, but Tobin refused. Undeterred by this response, the officer again asked if there were any drugs or weapons in the vehicle, and again, Tobin said no. The officer asked why, if there were no drugs or weapons in the vehicle, Tobin would not let him search it. "I just don't want you in there," Tobin explained.

At this point, Hullum placed Tobin in the back of his police car. He believed that Tobin was a flight risk because the foregoing exchange had caused Tobin to become agitated and nervous. Hullum returned to Tobin's vehicle and peered through its windows. He saw a large lump underneath the floor mat on the passenger side of the back seat. Continuing his inspection, he noticed a "green leafy substance" on the floor in front of the driver's seat, "right where the driver's feet would be." Believing the substance was marihuana, he entered the vehicle and searched it.

Hullum collected the "green leafy substance," which was later sent to a laboratory for testing. It weighed only five-tenths of a gram and turned out not to be marihuana or any other controlled substance. The large lump was a shoe box containing close to thirty thousand dollars in cash, which Hullum seized.

Tobin was taken to the police station on charges of possession of marihuana and illegal investment. No criminal charges were ever filed against him, and he was subsequently released. Nevertheless, the State filed an action seeking forfeiture of the currency. It alleged that the currency was subject to forfeiture because, inter alia, it constituted proceeds gained from the commission of a felony under the Texas Controlled Substances Act. *See* TEX. CRIM. PROC.CODE ANN. art. 59.01(2)(D) (Vernon Supp.2004).

Before the forfeiture hearing, Tobin filed a motion to suppress and for return of the currency, claiming that his deten-

tion, search, and arrest were illegal. The trial court granted the relief and dismissed the case. This appeal followed.

## II. Applicability of the Exclusionary Rule

As a preliminary matter, the parties dispute whether the exclusionary rule applies to civil forfeiture proceedings.[1] This issue is unsettled in Texas. *See State v. $217,590 in U.S. Currency,* 18 S.W.3d 631, 632 n. 1 (Tex.2000). However, we need not address it to decide this case because we conclude that the civil forfeiture statute does not authorize illegal police conduct. Regardless of whether the exclusionary rule applies, law enforcement agents cannot seize property if their actions leading up to the seizure are illegal. Thus, the trial court did not err in evaluating the legality of Tobin's detention, search, and arrest.

Chapter 59 of the Texas Code of Criminal Procedure specifies the circumstances in which property subject to forfeiture may be seized. *See* TEX.CRIM. PROC.CODE ANN. art. 59.03 (Vernon Supp.2004). Seizure of property is proper if made under authority of a search warrant. *Id.* art. 59.03(a). Without a warrant, seizure is proper if:

(1) the owner, operator, or agent in charge of the property knowingly consents;

(2) the seizure is incident to a search to which the owner, operator, or agent in charge of the property knowingly consents;

---

1. Under the exclusionary rule, evidence obtained as the result of an unreasonable search and seizure is inadmissible as evidence in a criminal proceeding. *See State v. $217,590.00 in U.S. Currency,* 18 S.W.3d 631, 632 n. 1 (Tex.2000). In Texas, the exclusionary rule is codified in the code of criminal procedure. *See* TEX.CRIM. PROC.CODE ANN. art. 38.23 (Vernon Supp.2004). In part, it reads: "No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case." *Id.* art. 38.23(a).

(3) the property subject to seizure has been the subject of a prior judgment in favor of the state in a forfeiture proceeding under this chapter; or

(4) the seizure was incident to a lawful arrest, lawful search, or lawful search incident to arrest.

*Id.* art. 59.03(b).

In this case, it is undisputed that Hullum had no search warrant, no consent from Tobin, and no prior judgment in favor of the State. Thus, for the seizure to have been authorized by article 59.03, it had to have been "incident to a lawful arrest, lawful search, or lawful search incident to arrest." *See id.*

After reviewing Hullum's deposition testimony and the arguments and authorities presented by each party, the trial court ruled that Hullum's conduct was illegal. In the court's words:

> The automobile occupied and being driven by Respondent–Claimant (Tobin) was illegally searched for each or all of the foregoing [sic] reasons: Tobin was illegally arrested because he was arrested in violation of the Texas Transportation Code, was arrested without probable cause, and was arrested without a warrant. Further, the search of the vehicle was egregiously illegal because it was made despite Tobin's express denial and refusal of consent for it to be searched, and was made without probable cause. Therefore, the search was illegal and was not incident to a legal arrest.

From these conclusions, we infer that the trial court concluded that the seizure was not incident to a lawful arrest, lawful search, or lawful search incident to arrest as required by article 59.03. *See id.* The seizure was therefore unauthorized. *See id.*

## III. Legality of Police Conduct

The State's first two issues on appeal claim that the seizure was valid under article 59.03 because Officer Hullum properly: (1) detained Tobin based on a reasonable suspicion that Tobin was driving while intoxicated and engaged in drug activity; and (2) searched Tobin's automobile based on probable cause that there were drugs inside the automobile.

### a. Standard of Review

■ Where the underlying historical facts are undisputed, we decide whether the trial court properly applied the governing constitutional principles to the facts. *See $217,590 in U.S. Currency,* 18 S.W.3d at 634; *accord Guzman v. State,* 955 S.W.2d 85, 89 (Tex.Crim.App.1997) (explaining that appellate courts review mixed questions of law and fact de novo when no evaluations of credibility and demeanor are involved). Because the parties agree on the facts of this case, we decide the issues of reasonable suspicion and probable cause de novo. *See Manns v. State,* 122 S.W.3d 171, 178 (Tex.Crim.App.2003) (following the standard of review articulated in *Guzman*); *$217,590 in U.S. Currency,* 18 S.W.3d at 634 n. 3 (citing *Guzman* and noting that its standard of review principles are similarly applied in civil cases).

### b. Reasonable Suspicion to Detain Driver for Drug Activity

The parties do not contest Hullum's actions in pulling Tobin over for speeding and detaining him long enough to do a background check and issue a speeding ticket. However, they do dispute whether the officer was required to release Tobin after the speeding ticket had been issued. The State argues that Hullum was not required to release Tobin after issuing the ticket because Hullum reasonably suspected that Tobin was engaged in drug activi-

ty. At the very least, the State argues, Hullum had a reasonable suspicion that Tobin was driving while intoxicated. According to the State, Hullum had just stopped Tobin for speeding in an area of the city frequented by drunk drivers and had observed that Tobin had bloodshot eyes. Additionally, during Hullum's warrant check, he discovered that Tobin had a previous drug arrest and had been suspected in a marihuana possession case three months earlier. Based on Hullum's experience as a traffic officer and on his firsthand observations, the State contends that he reasonably suspected that Tobin was intoxicated by alcohol or marihuana and that Hullum was therefore entitled to detain Tobin long enough to confirm or dispel his suspicion.

 In response, Tobin argues that section 543.005 of the transportation code required the officer to release him after the speeding ticket was issued. TEX. TRANSP. CODE ANN. § 543.005 (Vernon Supp.2004).[2] We disagree. After a bona fide stop for speeding, an officer may make an arrest if another offense is discovered during the investigation. *Little v. State*, 853 S.W.2d 179, 184 (Tex.App.-Corpus Christi 1993, no pet.); *see also Taylor v. State*, 421 S.W.2d 403, 407 (Tex.Crim.App. 1967). Likewise, an officer can continue to detain a suspect after concluding his investigation of the traffic violation if he has a reasonable suspicion that criminal activity is underway. *See Perales v. State*, 117 S.W.3d 434, 439 (Tex.App.-Corpus Christi 2003, pet. ref'd). Thus, whether Hullum was required to release Tobin depends on whether he had developed a reasonable

suspicion of criminal activity before issuing Tobin the speeding ticket.

 Reasonable suspicion requires that the officer have specific, articulable facts, which, in light of his experience and general knowledge, together with rational inferences from those facts, would reasonably warrant the intrusion on the freedom of the citizen stopped for investigation. *See Gurrola v. State*, 877 S.W.2d 300, 302 (Tex.Crim.App.1994). The articulable facts "must create some reasonable suspicion that some activity out of the ordinary is occurring or has occurred, some suggestion to connect the detainee with the unusual activity, and some indication the unusual activity is related to crime." *Garza v. State*, 771 S.W.2d 549, 558 (Tex.Crim. App.1989). There need only be an objective basis for the detention; the subjective intent of the officer is irrelevant. *Garcia v. State*, 43 S.W.3d 527, 530 (Tex.Crim. App.2001). The determination of reasonable suspicion is made by considering the totality of the circumstances. *Id.*

 Here, Hullum knew five things: (1) Tobin had bloodshot eyes; (2) he had been speeding; (3) it was nighttime; (4) the area was traversed commonly by drunk drivers on their way to and from establishments that dispense alcohol; and (5) Tobin had a criminal history involving drugs. Before tabulating the totality of the circumstances, we must determine what inferences may reasonably be drawn from this knowledge. To do so, we consider these facts together with generally

---

2. Section 543.005 of the transportation code states:

 To secure release, the person arrested must make a written promise to appear in court by signing the written notice prepared by the arresting officer.... The arresting officer shall retain the paper or electronic orig-inal of the notice and deliver the copy of the notice to the person arrested. The officer shall then promptly release the person from custody.

 TEX. TRAN.CODE ANN. § 543.005 (Vernon Supp. 2004).

available knowledge and Hullum's personal experience.

■ The State has not argued that bloodshot eyes establish the use of intoxicants or that such a condition warrants a rational inference to that effect. Of all the physical manifestations of intoxication, such as slurred speech, impaired motor skills, and odors of intoxicants, irritated or "bloodshot" eyes give the least indication that the functioning of the nervous system has been disrupted by the use of intoxicants. Appellate courts have found reasonable suspicion based on various combinations of bloodshot eyes, slurred speech, impaired motor skills, and odors of intoxicants, but we have uncovered no case upholding an officer's reasonable suspicion based solely on a suspect's bloodshot eyes. See Perales, 117 S.W.3d at 439 (concluding that officer had a reasonable suspicion based on: (1) appellant's red eyes; (2) alcohol odor emitting from appellant's car and from his breath; and (3) a beer bottle in plain view behind a seat); State v. Brabson, 899 S.W.2d 741, 749 (Tex.App.-Dallas 1995), aff'd, 976 S.W.2d 182 (Tex.Crim. App.1998) (holding that a reasonable suspicion existed where defendant honked his horn excessively and officer smelled alcohol on his breath); Townsend v. State, 813 S.W.2d 181, 185 (Tex.App.-Houston [14th Dist.] 1991, pet. ref'd) (weaving back and forth across three lanes at 2 a.m. is sufficient to raise a reasonable suspicion of driving while intoxicated). The smell of alcohol on a driver's breath or erratic driving might on its own warrant a rational inference of intoxication, but we conclude that without any other indications, bloodshot eyes are not enough to create an objective, reasonable suspicion that intoxicants have been used.

■ In doing so, we note two things: (1) the State has cited no cases in which bloodshot eyes alone have been held to be sufficient justification for a reasonable suspicion; and (2) the evidence before us does not tend to show that bloodshot eyes are a reliable basis for reasonably suspecting that a person is intoxicated. Hullum did not testify to any personal knowledge or experience to establish that bloodshot eyes indicate intoxication. Although we are allowed to consider general knowledge in examining the totality of the circumstances, such knowledge militates against reasonable suspicion because bloodshot eyes may be caused by a variety of factors, only one of which is the use of intoxicants.

■ Next, we add the offense of speeding. Intoxication cannot be inferred rationally from the offense of speeding alone. Although speeding together with bloodshot eyes may be more suggestive of intoxication than either factor taken alone, the logical combination of these circumstances is not so much greater than the aggregation of their individual weights that it allows for a rational inference of intoxication.

■ Now, we consider that the encounter occurred at night. By itself, this factor is owed virtually no weight. See Klare v. State, 76 S.W.3d 68, 74 (Tex.App.-Houston [14th Dist.] 2002, pet. ref'd) ("time of day is not suspicious in and of itself") (citing cases including Brown v. Texas, 443 U.S. 47, 53, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979) (concluding that nighttime activity per se is not sufficient to create reasonable suspicion of criminal activity)). Cf. Gamble v. State, 8 S.W.3d 452, 453–54 (Tex.App.-Houston [1st Dist.] 1999, no pet.) (holding that detention was illegal where defendant was apprehended at 3:00 a.m. in an area known for drug sales after walking away from a police squad car). The nighttime factor diminishes the weight of the first factor, bloodshot eyes, which are as much an indication of intoxication as they are of

strong emotion, natural fatigue, allergies, or optic strain owed to driving at night. Natural fatigue and optic strain are more likely at night. We therefore conclude that the case for reasonable suspicion is not advanced by this factor.

 The next consideration is Hullum's personal knowledge that drunk driving was not uncommon in the area where he stopped Tobin. Like the three factors above, being in a "bad" area of town is not enough to support a reasonable suspicion. *See Gurrola,* 877 S.W.2d at 303 (noting that the "high-crime reputation" of the area alone may not serve as the basis for an investigative detention). It is also an insufficient basis for a rational inference that would lead to a reasonable suspicion. *See id.*

Nevertheless, the location of the encounter becomes more significant when combined with the nighttime setting, Tobin's bloodshot eyes, and his speeding. The case for reasonable suspicion is strengthened further when these factors are combined with Tobin's criminal history involving drugs. From the totality of these circumstance, Hullum could have formed a reasonable suspicion that Tobin was under the influence of an intoxicant. Therefore, we conclude that Hullum lawfully detained Tobin to investigate the offense of driving while intoxicated.

 The State, however, argues that Hullum also had a reasonable suspicion that Tobin was in possession of illegal drugs. We disagree. At this point, the circumstances known to Hullum created only a reasonable suspicion that Tobin was under the influence of an intoxicant, which could have been alcohol or some other drug, whether legal or illegal. If Hullum suspected that Tobin was in possession of illegal drugs, his suspicion was no more than a hunch. It was not enough to justify an investigative detention. *See Williams*

*v. State,* 621 S.W.2d 609, 612 (Tex.Crim. App.1981).

### c. Probable Cause to Search the Vehicle for Drugs

 Having concluded that Hullum was not required to release Tobin after issuing the speeding ticket, we must determine whether his investigative detention led to a lawful search of Tobin's vehicle. An investigative detention must be reasonably related in scope to the circumstances that justified the inference of criminal activity in the first place. *See Davis v. State,* 947 S.W.2d 240, 242 (Tex.Crim.App. 1997) (citing *Terry v. Ohio,* 392 U.S. 1, 19–20, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). An investigative detention, like any other search, must be strictly circumscribed by the exigencies that justify its initiation. *Id.* at 243 (citing *Terry,* 392 U.S. at 25–26, 88 S.Ct. 1868). The scope of the search must be limited because a search that is reasonable at its inception may violate the Fourth Amendment by virtue of its intolerable intensity and scope. *Id.* (citing *Terry,* 392 U.S. at 18, 88 S.Ct. 1868). An investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop. *Id.* (quoting *Florida v. Royer,* 460 U.S. 491, 500, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983)). This limitation means that once the reason for the stop has been satisfied, the stop may not be used as a "fishing expedition" for unrelated criminal activity. *Id.* (quoting *Ohio v. Robinette,* 519 U.S. 33, 41, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996) (Ginsberg, J., concurring)).

The State argues that the following factors, considered together, gave Hullum probable cause to search Tobin's vehicle for drugs: (1) Tobin's bloodshot eyes; (2) Tobin's criminal history; (3) the cash Hullum discovered on Tobin's person; (4) the odor of burnt marihuana emanating from

Tobin's person; (5) Tobin's nervousness and agitation following Hullum's repeated requests to search the vehicle and inquiries as to whether drugs or weapons were inside; (6) the "green leafy substance" in "plain view"; and (7) the large bulge underneath the rear passenger floor mat. We decide this case without reaching the issue of whether these factors constitute probable cause to search an automobile for contraband.

 Our analysis begins with whether Hullum was authorized to search Tobin for weapons. In the course of an investigative detention, an officer may conduct a limited search for weapons where it is reasonably warranted for his safety or the safety of others. *Ramirez v. State,* 672 S.W.2d 480, 482 (Tex.Crim.App.1984); *see Horton v. State,* 16 S.W.3d 848, 852 (Tex.App.-Austin 2000, no pet.). A weapons search is not authorized in all confrontational situations. *See Carmouche v. State,* 10 S.W.3d 323, 329 (Tex.Crim.App. 2000) (explaining that a weapons search is "only justified where the officer can point to specific and articulable facts which reasonably lead him to conclude that the suspect might possess a weapon"). In *Terry,* the United States Supreme Court explained that "even a limited search of the outer clothing for weapons constitutes a severe, though brief, intrusion upon cherished personal security, and it must surely be an annoying, frightening, and perhaps humiliating experience." *Terry,* 392 U.S. at 24–25, 88 S.Ct. 1868. Nevertheless, the Court authorized a limited patdown for weapons where a reasonably prudent officer would be warranted in the belief, based on "specific and articulable facts," *id.* at 21, 88 S.Ct. 1868, and not on a mere "inchoate and unparticularized suspicion or 'hunch,'" *id.* at 27, 88 S.Ct. 1868, "that he is dealing with an armed and dangerous individual," *id. See also Maryland v.*

*Buie,* 494 U.S. 325, 332, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990); *Worthey v. State,* 805 S.W.2d 435, 438 (Tex.Crim.App.1991) ("'specific and articulable facts' must appear in the record which would warrant a self-protective search for weapons").

 In this case, Hullum conducted a weapons search because it was nighttime and because he was alone with a suspect. He testified that he was concerned for his safety. These facts are not enough to warrant a reasonable suspicion that Tobin was armed and dangerous. Regardless of whether an officer testifies that he was afraid, a court analyzes the validity of the search by determining whether the facts available to the officer at the time of the search would warrant a reasonably cautious person to believe the action taken was appropriate. *See O'Hara v. State,* 27 S.W.3d 548, 551 (Tex.Crim.App.2000). Although the United States Supreme Court has noted that "roadside encounters between police and suspects are especially hazardous," *Michigan v. Long,* 463 U.S. 1032, 1049, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983), it has not held that weapons frisks are permitted in every such encounter. The officer still must have a reasonable suspicion that the suspect is armed and dangerous. *See Buie,* 494 U.S. at 332, 110 S.Ct. 1093.

Here, Hullum had no specific, articulable facts on which to base a reasonable belief that Tobin was armed and dangerous. His testimony shows that Tobin was entirely cooperative during the traffic stop. Before the frisk, he was not nervous or agitated. He had made no sudden movements or furtive gestures. He did not try to flee. Although Hullum reasonably suspected that Tobin had used an intoxicant of some kind, that alone does not raise a reasonable suspicion that Tobin was armed. In sum, the totality of the circumstances provided no basis for a reasonable suspicion

that warranted a weapons search. The frisk was therefore illegal.

█ After the frisk, Hullum administered a field sobriety test, which Tobin passed. According to Hullum, there was no reason for further testing. He was convinced that Tobin was not intoxicated. At this point, Hullum's original suspicion was dispelled and the purpose of the investigative detention was fulfilled. *See Davis*, 947 S.W.2d at 245 (holding that the purpose of an investigative detention regarding driving while intoxicated was effectuated when the officers determined that the suspect was not intoxicated). In order to prolong the investigative detention, Hullum had to have a reasonable suspicion that some other criminal activity was underway. *See Perales*, 117 S.W.3d at 439.

█ The only additional facts that might have raised a new reasonable suspicion were discovered during the weapons frisk. It was during the weapons frisk that Hullum smelled the odor of burnt marihuana on Tobin's clothing and learned that Tobin was carrying roughly a thousand dollars in cash. These facts, however, were illegally-discovered. They came from an illegal search. Indeed, the constitutional validity of the entire investigative detention was derailed by the unauthorized weapons frisk. *See Terry*, 392 U.S. at 18, 88 S.Ct. 1868 ("a search which is reasonable at its inception may violate the Fourth Amendment by virtue of its intolerable intensity and scope"); *Davis*, 947 S.W.2d at 242 ("An investigative detention must be reasonably related in scope to the circumstances which justified the inference of criminal activity in the first place."). We will not allow the State to benefit from its unreasonable invasion of privacy by relying on circumstances uncovered by illegal police conduct to create a new reasonable suspicion.

█ The State also urges us to consider the "green leafy substance" that was in "plain view" and the large bulge underneath the rear passenger floor mat. We will not do so. These factors were discovered after the officer's reasonable suspicion was dispelled and the purpose of the investigative detention was fulfilled. *See State v. Daly*, 35 S.W.3d 237, 241–42 (Tex. App.-Austin 2000, no pet.) (holding that police officer had no basis for continuing to detain a suspect where traffic violation was addressed and suspect subsequently admitted to having a marihuana "roach"). As the United States Supreme Court has explained, "an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *Royer*, 460 U.S. at 500, 103 S.Ct. 1319. Because Tobin should have been released after he was cleared of suspicion for driving while intoxicated, the items subsequently discovered by Hullum cannot be used to justify the prolonged detention. *See Davis*, 947 S.W.2d at 244 (confirming that under *Terry*, reasonable suspicion must precede an investigative detention).

We overrule the State's second issue. Hullum did not have a reasonable suspicion that Tobin was in possession of illegal drugs. He had no probable cause to search Tobin's vehicle. Because Hullum's seizure of the currency was not incident to a lawful arrest, lawful search, or lawful search incident to arrest as required by article 59.03, we conclude that it was not authorized by the civil forfeiture statute. TEX.CRIM. PROC.CODE ANN. art. 59.03 (Vernon Supp.2004).

## IV. Dismissal for Lack of Jurisdiction

Next, we address the State's third issue, whether the trial court erred in dismissing the forfeiture action for lack of jurisdiction. In this issue, the State argues that suppression of the currency did not de-

prive the trial court of jurisdiction to hear its forfeiture action. Thus far, however, we have not discussed suppression of any evidence. Heretofore, we have evaluated only the police conduct that led to the currency's seizure to determine whether the seizure was made under the authority of article 59.03. Like the trial court, we have concluded that the seizure was unauthorized because it was made unlawfully. Now, we address the consequences of the seizure's illegality.

In a single filing, Tobin requested that the trial court suppress the currency and order the State to return it to him because it was seized illegally. As a secondary matter, in the same filing, he asked the trial court to dismiss the case for lack of jurisdiction. In response to Tobin's requests, the State argued that the currency could not be suppressed because the exclusionary rule did not apply to civil forfeiture actions. In the alternative, it contended that even if the exclusionary rule were applicable, the currency could not be suppressed because it was the subject matter of the suit and its suppression would defeat the court's jurisdiction. In a single order, the trial court granted all the relief requested by Tobin.

On appeal, the State maintains that the exclusionary rule does not apply. In the alternative, however, it now argues that suppression of the currency did *not* divest the trial court of jurisdiction. The State has thus advanced two contradictory positions in this case. First, it urged the trial court not to suppress the currency because doing so would defeat its jurisdiction. On appeal, however, it argues that suppression of the currency did *not* defeat the trial court's jurisdiction. In addressing the State's third issue, we do not reach the consequences of this inconsistency because we do not address the applicability of the exclusionary rule. That is, in deciding this case, we do not reach the merits of Tobin's motion to suppress, and therefore, we need not address the exclusionary rule's applicability to civil forfeiture proceedings under chapter 59.

Although the State responded to Tobin's request that the trial court suppress the currency, it never addressed Tobin's request that the currency be returned to him. Suppression of evidence and return of property are not the same relief. Thus, we do not construe the State's challenge to the currency's suppression as a challenge to the currency's return, except insofar as the State has continuously maintained that the seizure was lawful.

■■■ Even more fundamentally, however, the State has never challenged the procedural propriety of a motion to return unlawfully seized property in a chapter 59 action. Thus, any error in this procedure was not preserved. *See* Tex.R.App. P. 33.1. Consequently, in addressing the State's third issue, we assume without deciding that a motion to return seized property is the proper procedural vehicle by which the protections afforded by article 59.03 are effectuated. *Cf. $217,590 in U.S. Currency*, 18 S.W.3d at 632 n. 1 (assuming without deciding that the exclusionary rule applies to civil forfeiture proceedings because neither party challenged its application). We emphasize that because the State has wholly failed to challenge this pre-trial mechanism, this appeal does not present the issue of whether it is proper. *See* Tex.R.App. P. 33.1(a) ("a prerequisite to presenting a complaint for appellate review" is preservation of the error). We must assume that the return of unlawfully seized property is a remedy available pursuant to article 59.03 because the State has waived any challenge it may have had to such a procedure. *See Fortune Prod. Co. v. Conoco, Inc.,* 52 S.W.3d 671, 681 (Tex. 2000); *Nelson v. State,* 607 S.W.2d 554,

555 (Tex.Crim.App.1980) ("Appellant may not, for the first time on appeal, urge error not raised at trial."); *City of Port Isabel v. Shiba*, 976 S.W.2d 856, 860–61 (Tex.App.-Corpus Christi 1998, no pet.) (upholding the trial court's award of attorney's fees despite the absence of statutory authority for such an award because the issue was not preserved by an objection and was therefore waived). Furthermore, even if the error had been preserved indirectly through the State's objection to the motion to suppress, which it was not, the issue would be deemed inadequately briefed and therefore waived because the State has presented no arguments and cited no authorities on this issue. *See* TEX.R.APP. P. 38.1(h); *In re Barr*, 13 S.W.3d 525, 555 (Tex.Rev.Trib.1998) ("Failure to cite authority in support of a point of error on appeal waives the complaint.").

■■■ As Part III, *supra*, explained, Hullum's seizure of the currency was unlawful and therefore unauthorized by article 59.03. The State thus had no right to seize the currency under chapter 59. *See* TEX. PENAL CODE ANN. § 59.03(a), (b) (listing the limited circumstances under which the State can seize property under chapter 59). Consequently, the State could not proceed with a forfeiture action under article 59 because a valid seizure is a necessary prerequisite for such an action. *See id.* The State's pleadings concede that the currency belongs to Tobin. Thus, Tobin, and not the State, had the present right to possess the currency. On this basis, we conclude that the trial court did not err in ordering it returned to him.

■■■ Next, we must determine whether the currency's return divested the trial court of jurisdiction. Civil forfeiture actions are in rem proceedings. *$191,452.00 v. State*, 827 S.W.2d 430, 433 (Tex.App.-Corpus Christi 1992, writ denied); *see also State v. Rumfolo*, 545 S.W.2d 752, 754

(Tex.1976) *Fant v. State*, 931 S.W.2d 299, 307 (Tex.Crim.App.1996); *Bochas v. State*, 951 S.W.2d 64, 67 n. 3 (Tex.App.-Corpus Christi 1997, writ denied). The trial court's jurisdiction depends on its control over the property. *Costello v. State*, 774 S.W.2d 722, 723 (Tex.App.-Corpus Christi 1989, writ denied); *see also 1976 Harley Davidson Motorcycle v. State*, 106 S.W.3d 398, 400 (Tex.App.-Corpus Christi 2003, no pet.); *State v. Approximately $2,000,000.00 in U.S. Currency*, 822 S.W.2d 721, 726 (Tex.App.-Houston [1st Dist.] 1991, no writ). The release or removal of the property from the control of the court will terminate the court's jurisdiction over the property. *Approximately $2,000,000.00 in U.S. Currency*, 822 S.W.2d at 726 (citing *Costello*, 774 S.W.2d at 724). However, if the property is released accidentally, fraudulently, or improperly, the court will not be divested of its jurisdiction. *Id.* (citing *Costello*, 774 S.W.2d at 724).

We have already concluded that the trial court properly ordered the currency returned to Tobin. This act divested the court of jurisdiction to continue the State's forfeiture proceeding. *See id.* Thus, the court did not err in dismissing the case.

The State argues to the contrary. It relies on *Pine v. State*, 921 S.W.2d 866, 871 (Tex.App.-Houston [14th Dist.] 1996, writ dism'd w.o.j.) for the proposition that "[w]hile an unlawful seizure may result in suppression of evidence, it does not deprive a court of jurisdiction." In general, we have no quarrel with this statement of the law. We have not held that an unlawful seizure, on its own, deprives a court of jurisdiction or that the suppression of evidence causes the court to lose jurisdiction. We have concluded that if the subject of a forfeiture action under chapter 59 is properly ordered returned to its owner, the trial court's jurisdiction terminates be-

cause such authority is based on control of the property. *See Approximately $2,000,000.00 in U.S. Currency*, 822 S.W.2d at 726 (citing *Costello*, 774 S.W.2d at 724). *Pine* is in harmony with this proposition, as it acknowledged that "events may occur after the initial seizure that can destroy the jurisdiction of the court." *Pine*, 921 S.W.2d at 871. In deciding not to stretch the rationale of *Pine* to reach this case, we emphasize that *Pine* did not address a situation where the trial court ordered the subject matter of a forfeiture proceeding returned to its owner. Instead, *Pine* addressed what effect the suppression of evidence would have on a forfeiture proceeding. Furthermore, *Pine* did not involve a civil forfeiture case under chapter 59. It involved the forfeiture of animals under the health and safety code. *See id.* at 870.

We have not addressed the suppression of evidence. We have not relied on the exclusionary rule to decide this case. We hold that the proper return of property to its rightful owner deprives the trial court of jurisdiction to continue proceedings for the forfeiture of the property.

## V. Response to Dissenting Opinion

We take a moment to distinguish our analysis from that of the dissenting opinion. The dissenting opinion would address the exclusionary rule's applicability to chapter 59 civil forfeiture actions. It would hold that the rule does not apply, and for that reason, it would reverse the trial court's order and remand the case for a trial on the merits.

As the above analysis explains, however, it is unnecessary to decide the applicability of the exclusionary rule to civil forfeiture proceedings under chapter 59. Because we must hand down written opinions that are "as brief as practicable" and address only the issues "necessary to

final disposition of the appeal," we decline to address the dissent's questionable assertion that the application of the exclusionary rule would have no deterrent effect in cases such as this, where the State's forfeiture action under the criminal code of procedure is based entirely on illegal police conduct. *See* TEX.R.APP. P. 47.1.

Nevertheless, we emphasize that the dissent's analysis fails to account for Tobin's motion to return, which is not based on the exclusionary rule. Even if, as the dissent argues, the exclusionary rule does not apply to civil forfeiture proceedings, such a conclusion only resolves the motion to suppress and does not address the merits of the motion to return. The dissent suggests that a no-evidence motion for summary judgment is the "proper pre-trial procedure to give effect to chapter 59's built-in Fourth Amendment protections." *See* TEX.R. CIV. P. 166a(i). Although we agree that some pre-trial procedure is necessary to effectuate the protection created by article 59.03, this case does not present the issue of which mechanism is the most appropriate. Because the State failed to object to Tobin's use of the motion to return, we assume that the motion to return is the proper procedural device.

The dissent argues that by doing so, we have both created and sanctioned a new procedural device without any equivalent in the rules of civil procedure. This misstates our opinion and the law. The use of a motion to return illegally-seized property is a practice older than this Court. *See Machado v. State*, 112 Tex.Crim. 538, 17 S.W.2d 1060, 1061 (Tex.Crim.App.1929) (reviewing trial court's refusal to grant a motion to return illegally seized liquor). We have not created it, nor was Tobin the first to use it in the context of a civil forfeiture action. *See One 1985 Cadillac Auto. v. State*, 805 S.W.2d 944, 946 (Tex. App.-Fort Worth 1991, no pet.) (reviewing

a motion to return seized property in a civil forfeiture action brought under chapter 59's statutory predecessor and concluding that property was properly forfeited to the State). We also have not sanctioned it. By failing to object to the motion to return and by failing to raise or brief any issues on it, the State has not preserved any error for our review. *See* TEX.R.APP. P. 33.1(a), 38.1(h). This does not mean we sanction the motion to return or recommend that parties use it in the future. Rather, we simply are constrained by the rules of procedure, which limit the scope of our decision to the issues presented on appeal. The motion to return was not challenged at trial, and no complaints about it have been raised on appeal. Our role is not to defend any potential error the State did not object to at trial and failed to brief on appeal. And we are certainly not charged with creating a workable procedural regime out of any such unpreserved error.

■ Although we applaud the dissent's willingness to consider potential safeguards against illegal seizures, we are uncertain that a no-evidence motion for summary judgment is a good candidate given the current law of civil forfeitures. A no-evidence motion for summary judgment can be granted only on "the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial." *Id.* Thus, for a no-evidence motion for summary judgment to work as the dissent proposes, the State must bear the burden of proving that the seizure was authorized under article 59.03 as part of its case. That is, a valid seizure under article 59.03 must be an essential element of a forfeiture claim. The dissent has cited no authority stating that a valid seizure under article 59.03 is an essential element of the State's case, nor are we

aware of any such precedent from any Texas court, though we agree that it should be a necessary component of any forfeiture case. *But see Twenty–Four Thousand One Hundred & Eighty Dollars v. State,* 865 S.W.2d 181, 187–88 (Tex.App.-Corpus Christi 1993, writ denied) (overruling appellant's challenge to the legal and factual sufficiency of the evidence supporting the trial court's conclusion that a seizure was made pursuant to 59.03 but not stating that such a conclusion was necessary for the State to succeed on its claim).

■ Under current law, to succeed in a forfeiture action, the State must prove by a preponderance of the evidence that the property is subject to forfeiture. TEX. CRIM. PROC.CODE ANN. art. 59.05(b) (Vernon Supp.2004); *see also $19,070.00 v. State,* 869 S.W.2d 608, 611 (Tex.App.-Houston [14th Dist.] 1994, no writ). The State does this by establishing that the property is contraband as defined by article 59.01(2). TEX.CRIM. PROC.CODE ANN. art. 59.01(2) (Vernon Supp.2004); *see Bochas,* 951 S.W.2d at 68. Although chapter 59 specifies no additional evidentiary requirements for forfeiture beyond proof that the property is contraband, the supreme court has held that the State must also show probable cause for seizing a person's property. *See Fifty–Six Thousand Seven Hundred Dollars in U.S. Currency v. State,* 730 S.W.2d 659, 661 (Tex.1987); *see also State v. $11,014,* 820 S.W.2d 783, 784 (Tex.1991). According to the supreme court, "Probable cause in the context of forfeiture statutes is a reasonable belief that 'a substantial connection exists between the property to be forfeited and the criminal activity defined by the statute.'" *Fifty–Six Thousand Seven Hundred Dollars in U.S. Currency,* 730 S.W.2d at 661 (quoting *U.S. v. $364,960.00 in U.S. Currency,* 661 F.2d 319, 323 (5th Cir.1981)). Thus, probable cause to seize is not the same as the probable cause necessary for the "lawful

search, lawful arrest, or lawful search incident to arrest" required by article 59.03(b)(4). Although we would hold that probable cause to seize property cannot be predicated on an unlawful search, unlawful arrest, or unlawful search incident to arrest, our disposition of this case renders such a holding unnecessary. Rather than conclude that unlawful police conduct cannot create probable cause to seize, we have held that the motion for return of property was properly granted because the seizure was illegal and unauthorized by article 59.03.

The dissent, in contrast, would add a new, third requirement to the State's evidentiary burden when a seizure is made without a warrant: that the State must prove one of the exceptions to the warrant requirement listed in article 59.03. Thus, where a seizure is made without a warrant and none of the other three exceptions to the warrant requirement applies, the State would have to show probable cause for a lawful search, lawful arrest, or lawful search incident to arrest, in addition to showing probable cause to seize.

The dissent mistakenly relies upon the supreme court's decision in *$217,590 in U.S. Currency* as support for its position. In that case, the supreme court assumed without deciding that the exclusionary rule applied. *$217,590 in U.S. Currency*, 18 S.W.3d at 632 n. 1. It then proceeded to discuss consent to search within the context of the exclusionary rule and not chapter 59. *See id.* at 633–35. In doing so, it made no reference to article 59.03, and it did not hold that proving consent to search was part of the State's case under chapter 59. This is understandable given that the court's decision did not concern the State's burden of proof under chapter 59, as the dissent argues; it dealt with the State's burden of proof to defeat a motion to suppress based on the exclusionary rule. Thus, contrary to the dissent, we do not

read *$217,590 in U.S. Currency* as adding a third requirement to the State's evidentiary burden under chapter 59. The supreme court simply did not discuss article 59.03 in *$217,590 in U.S. Currency*. It analyzed the exclusionary rule, which, the dissent argues, does not apply in this case. Accordingly, we find the dissent's reliance on *$217,590 in U.S. Currency* misplaced because that case applied a rule that the dissent itself argues should not be applied in this case.

Although we agree that the dissent's proposal would effectuate the protections found in article 59.03, we nonetheless decline to elevate one procedural device over another because the issue was neither preserved nor adequately briefed. Instead, we confine our decision to the issues presented and agree with the dissent that the State must act lawfully in seizing property because illegal police conduct cannot lead to a successful civil forfeiture action.

## VI. Conclusion

We overrule the State's three issues and affirm the trial court's order returning the currency to Tobin and dismissing the State's case.

Dissenting Opinion by Justice ERRLINDA CASTILLO.

Dissenting Opinion by Justice Castillo.

Because of the procedural posture in which this civil forfeiture action reached our Court, I dissent from the majority's refusal to address application of the exclusionary rule in civil forfeiture proceedings in Texas. Tobin filed a motion to suppress the $36,660 as the fruit of an illegal detention and search. The trial court granted the motion to suppress on that basis. Tobin also asked the trial court to return the property and dismiss the case. The trial court agreed and ordered the money returned to Tobin. Concluding that jurisdiction of an *in rem* civil forfeiture action

requires a subject *res*, it then dismissed the case for want of subject-matter jurisdiction. The State argues on appeal that: (1) Tobin's detention was legal; (2) the search of Tobin's vehicle was legal; and (3) even if the detention and search were illegal, the trial court should not have dismissed the action for lack of subject-matter jurisdiction. The parties agree that the trial court applied the exclusionary rule in granting Tobin's motion to suppress and, as a consequence, in returning the money and dismissing the case.

## I. APPLICATION OF THE FOURTH AMENDMENT EXCLUSIONARY RULE TO CIVIL FORFEITURES IN TEXAS

The issue squarely before this Court is whether the exclusionary rule applies in civil forfeiture cases brought under chapter 59 of the code of criminal procedure. *See* TEX.CODE CRIM. PROC. ANN. art. 59.01 .12 (Vernon Supp.2004). The approach taken to date in Texas by courts and parties alike is to assume that the exclusionary rule applies without analyzing whether it does or does not. *See, e.g., State v. $217,590*, 18 S.W.3d 631, 632 n. 1 (Tex. 2000) ("Because both parties in this case presume the exclusionary rule's application, we will assume without deciding that the rule applies."); *1986 Dodge 150 Pickup v. State*, 129 S.W.3d 180, at 181–83 (Tex. App.-Texarkana 2004, no pet. h.) ("We assume, as do both parties, the exclusionary rule applies to civil forfeiture proceedings."). The exclusionary rule's application in this case has been well briefed and argued by the parties. I would address the issue.

### A. The Exclusionary Rule

#### 1. The Purpose of the Exclusionary Rule

The exclusionary rule is a judicially created remedy designed to safeguard the Fourth Amendment's right of privacy. *Weeks v. United States*, 232 U.S. 383, 393–94, 34 S.Ct. 341, 58 L.Ed. 652 (1914). Its primary purpose is to deter unlawful conduct by law enforcement by prohibiting use of illegally obtained evidence. *United States v. Janis*, 428 U.S. 433, 454 n. 29, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976). A secondary purpose is to prevent judicial imprimatur of overzealous police action. *Ahart v. Colo. Dep't of Corr.*, 964 P.2d 517, 520 (Colo.1998). The exclusionary rule applies in all state criminal proceedings. *See Mapp v. Ohio*, 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

#### 2. The Burdens of Proof Associated with the

### Exclusionary Rule in Criminal Cases

An accused seeking to suppress evidence on the basis of illegal police conduct bears the burden of proof to rebut a presumption of proper police conduct. *See McGee v. State*, 105 S.W.3d 609, 613 (Tex.Crim.App. 2003). The accused satisfies the burden by proving the police acted without a warrant. *Id.* The burden then shifts to the State to either produce a warrant or prove the reasonableness of the challenged conduct. *Id.* If the State produces a warrant, the burden of proof again shifts to the accused to show the invalidity of the warrant. *Russell v. State*, 717 S.W.2d 7, 9–10 (Tex.Crim.App.1986) (op. on reh'g). If the State is unable to produce a warrant, it must prove the reasonableness of the search or seizure. *Id.* The State may demonstrate reasonableness by proving that a statutory exception to the warrant requirement was met. *See McGee*, 105 S.W.3d at 613. The State must prove probable cause by a preponderance of the evidence. *Porter v. State*, 938 S.W.2d 725, 727–28 (Tex.App.-Houston [1st Dist.] 1996,

pet. ref'd).[1] With this basic background in mind, I would turn to the forfeiture statute under which the authorities seized Tobin's $36,660.

### B. Forfeiture of Contraband in Texas

Forfeiture under chapter 59 is an *in rem* civil proceeding. *$191,452.00 v. State*, 827 S.W.2d 430, 433 (Tex.App.-Corpus Christi 1992, writ denied). The version of article 59.03 in effect at the time of the seizure in this case provided:

(a) Property subject to forfeiture under this chapter may be seized by any peace officer under authority of a search warrant.

(b) Seizure of property subject to forfeiture may be made without warrant if:

(1) the owner, operator, or agent in charge of the property knowingly consents;

(2) the seizure is incident to a search to which the owner, operator, or agent in charge of the property knowingly consents;

(3) the property subject to seizure has been the subject of a prior judgment in favor of the state in a forfeiture proceeding under this chapter; or

(4) the seizure was incident to a lawful arrest, lawful search, or lawful search incident to arrest.

(c) A peace officer who seizes property under this chapter has custody of the property, subject only to replevy under Article 59.02 of this code or an order of a court. A peace officer who has custo-dy of property shall provide the attorney representing the state with a sworn statement that contains a schedule of the property seized, an acknowledgment that the officer has seized the property, and a list of the officer's reasons for the seizure. Not later than 72 hours after the seizure, the peace officer shall:

(1) place the property under seal;

(2) remove the property to a place ordered by the court; or

(3) require a law enforcement agency of the state or a political subdivision to take custody of the property and move it to a property location.

Act of July 19, 1989, 71st Leg., 1st C.S., ch. 12, § 1, 1989 Tex. Gen. Laws 14 (eff. Oct.18, 1989) (current version at Tex.Code Crim. Proc. Ann. art. 59.03 (Vernon Supp. 2004)).[2] A "final conviction for an underlying offense is not a requirement for forfeiture" under chapter 59. Tex.Code Crim. Proc. Ann. art. 59.05(d).

#### 1. Commencement of a Civil Forfeiture Proceeding

Once a peace officer seizes contraband under chapter 59, the "attorney representing the state" must commence a forfeiture proceeding. Tex.Code Crim. Proc. Ann. art. 59.04(a). The "attorney representing the state" is the prosecutor with felony jurisdiction in the county in which the forfeiture proceeding is to be filed. Tex. Code Crim. Proc. Ann. art. 59.01(1).

#### 2. The Burdens of Proof in a Civil Forfeiture Proceeding

In all circumstances, to prevail in a civil forfeiture proceeding under chapter 59,

---

1. Similarly, the State's standard for proving the voluntariness of an accused's confession is preponderance of the evidence. *Zayas v. State*, 972 S.W.2d 779, 791 (Tex.App.-Corpus Christi 1998, pet. ref'd). The State's standard for proving consent to search is clear and convincing evidence. *State v. Ibarra*, 953 S.W.2d 242, 245 (Tex.Crim.App.1997); *Hen-son v. State*, 915 S.W.2d 186, 193 (Tex.App.-Corpus Christi 1996, no pet.).

2. The seizure at issue here occurred in 1998. Certain provisions of chapter 59 not relevant to my analysis have been amended. Citation hereafter is to the current version unless otherwise specified.

the State must satisfy a two-part test. *See State v. $11,014,* 820 S.W.2d 783, 784 (Tex. 1991) (per curiam). First, the State must show probable cause for seizing the property. *Id.* (citing TEX. CONST. art. I, § 9). In the context of civil forfeiture, probable cause is a "reasonable belief that a 'substantial connection exists between the property to be forfeited and the criminal activity defined by the statute.' " *$56,700 v. State,* 730 S.W.2d 659, 661 (Tex.1987) (quoting *United States v. $364,960,* 661 F.2d 319, 323 (5th Cir.1981)). Second, the State must prove by a preponderance of the evidence that the seized property is contraband and therefore subject to forfeiture. TEX.CODE CRIM. PROC. ANN. arts. 59.01(2), 59.05(b).[3] Further, if property is seized under chapter 59 without a warrant, article 59.03 imposes a third evidentiary burden. In that circumstance, in addition to proving probable cause and that the property is contraband subject to forfeiture, the State also bears the burden of proving one of the exceptions to the warrant requirement listed in article 59.03. *See* TEX.CODE CRIM. PROC. ANN. art. 59.03(b);

*see also $217,590,* 18 S.W.3d at 634 (finding that State proved consent to search by clear and convincing evidence).[4]

Moreover, evidence of a dismissal or acquittal in any underlying criminal case "raises a presumption that the property or interest that is the subject of the hearing is nonforfeitable." TEX.CODE CRIM. PROC. ANN. art. 59.05(d). The State may rebut the presumption of nonforfeitability by evidence that the owner knew or should have known that the property was contraband. *Id.; Bochas v. State,* 951 S.W.2d 64, 71 (Tex.App.-Corpus Christi 1997, pet. denied).

Further, article 59.02(c) provides an affirmative defense for innocent owners. TEX.CODE CRIM. PROC. ANN. art. 59.02(c). Once the State has met its burdens, the burden shifts to parties claiming the innocent-owner defense to prove they acquired an ownership interest in the property prior to, or during, the act giving rise to forfeiture. *Id.; Bochas,* 951 S.W.2d at 71.

Finally, Chapter 59 is subject to the Excessive Fines Clause.[5] Application of

---

**3.** Chapter 59 defines "contraband" as any real, personal, tangible, or intangible property that is used or intended to be used in the commission of a felony under Chapter 481 of the Texas Health and Safety Code (the Texas Controlled Substances Act). TEX.CODE CRIM. PROC. ANN. art. 59.01(2)(B)(I).

**4.** The supreme court did not address whether the State's evidentiary burden under article 59.03(b) is "clear and convincing" or a "preponderance of the evidence." *State v. $217,590,* 18 S.W.3d 631, 634 n. 4 (Tex.2000). Likewise, a determination of the quantum of proof required to meet the State's burden is unnecessary to a decision in this case. Despite the supreme court's analysis in *$217,590,* the majority questions my conclusion that article 59.03(b) imposes an additional evidentiary burden on the State where the seizure resulted from a warrantless search. I agree that *$217,590* does not expressly hold that the State bears the burden of proof under

article 59.03(b). However, the decision that the State proved consent to search by clear and convincing evidence is inconsistent with any conclusion that the State does *not* bear the burden of proof in a civil forfeiture proceeding. Similarly, the majority's insistence that *$217,590* is inapplicable assumes that the *owner* bears the burden of proof under article 59.03(b), a conclusion without any support in the law and inconsistent with the purpose and intent of the civil forfeiture statute.

**5.** *See* U.S. CONST. amend. VIII ("Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."). The Eighth Amendment is applicable to the states through the Fourteenth Amendment. *See* U.S. CONST. amend. XIV; *see also Robinson v. California,* 370 U.S. 660, 668, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962) ("We are not unmindful that the vicious evils of the narcotics traffic have occasioned the grave concern of government.").

constitutional proportionality standards result in a judgment of nonforfeiture if the forfeiture is excessive. *See One Car, 1996 Dodge X–Cab Truck White in Color 5YC–T17 VIN 3B7HC13Z5TG163723 v. State,* 122 S.W.3d 422, 427 (Tex.App.-Beaumont 2003, no pet.) ("We hold that forfeiture in this case is sufficiently punitive to be subject to the Excessive Fines Clause.").

### C. Application of the Exclusionary Rule in Other Civil Proceedings

#### 1. Federal Interpretation

As a judicially created remedy, the exclusionary rule does not "proscribe the use of illegally seized evidence in all proceedings or against all persons." *United States v. Calandra,* 414 U.S. 338, 348, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974). Its use is "restricted to those areas where its remedial objectives are thought most efficaciously served." *Id.* Since the rule is "prudential rather than constitutionally mandated," it is only applicable "where its deterrence benefits outweigh its 'substantial social costs.'" *Pa. Bd. of Prob. & Parole v. Scott,* 524 U.S. 357, 363, 118 S.Ct. 2014, 141 L.Ed.2d 344 (1998) (quoting *United States v. Leon,* 468 U.S. 897, 907, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984)).

The United States Supreme Court long has applied the exclusionary rule to federal forfeiture proceedings. *Boyd v. United States,* 116 U.S. 616, 620, 6 S.Ct. 524, 29 L.Ed. 746 (1886). "Forced and compulsory extortion of a man's own testimony or of his private papers to be used as evidence to convict him of a crime or forfeit his goods" violates the Fourth and Fifth Amendments when criminal prosecution and forfeiture "almost run into each other." *Boyd,* 116 U.S. at 630, 6 S.Ct. 524. The Supreme Court held that illegally obtained evidence may not be used to justify a forfeiture. *Id.* at 638, 6 S.Ct. 524; *see One 1958 Plymouth Sedan v. Pennsylvania,* 380 U.S. 693, 700–02, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1965) (holding exclusionary rule applicable to quasi-criminal forfeiture statute).

Nonetheless, more recently the Supreme Court has distinguished civil forfeitures tied to a person's criminal actions from those that proceed against the property without the need for a criminal conviction. *One Lot Emerald Cut Stones v. United States,* 409 U.S. 232, 236–37, 93 S.Ct. 489, 34 L.Ed.2d 438 (1972). Significantly, the Court modified its stance regarding the automatic characterization of forfeitures as "quasi-criminal" in favor of utilizing statutory construction to determine whether the forfeiture in question was, in fact, a civil or a criminal penalty, and thus whether constitutional protections applied. *Id.* Specifically, the Court found that a civil forfeiture was not barred by the double jeopardy clause of the Constitution following the owner's acquittal of criminal charges. *Id.* at 237, 93 S.Ct. 489. The Court noted that the forfeiture statute in question did not require the commission of a criminal offense. *Id.* at 236 n. 6, 93 S.Ct. 489. In reaching its decision, the Supreme Court also noted that the question of whether the forfeiture was a civil remedy or a criminal penalty was one of statutory construction. *Id.* at 237, 93 S.Ct. 489 (citing *Helvering v. Mitchell,* 303 U.S. 391, 400, 58 S.Ct. 630, 82 L.Ed. 917 (1938)).

Accordingly, expressing concern that indiscriminate application of the exclusionary rule might generate "disrespect for the law and administration of justice," the Supreme Court has adopted a balancing approach to application of the exclusionary rule in civil proceedings. *Leon,* 468 U.S. at 908, 104 S.Ct. 3405 (citing *Stone v. Powell,* 428 U.S. 465, 490, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976)). In determining

whether to apply the exclusionary rule in a particular context, the Supreme Court requires that the deterrent benefits outweigh the substantial costs to society of the loss of relevant and reliable evidence. *Scott,* 524 U.S. at 364, 118 S.Ct. 2014; *United States v. Janis,* 428 U.S. 433, 448–55, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976). Thus, a reviewing court must balance: (1) whether exclusion of the evidence in the particular context is substantially likely to deter future violations of the Fourth Amendment; or (2) whether application of the exclusionary rule will not result in appreciable deterrence, in which case its use would be unjustified. *Janis,* 428 U.S. at 454, 96 S.Ct. 3021. One factor to be weighed in the context of a civil proceeding is whether any additional substantial deterrence will be obtained by excluding the evidence in the civil proceeding beyond that already provided by preclusion of use of the evidence in a criminal proceeding. *Scott,* 524 U.S. at 364, 118 S.Ct. 2014; *Janis,* 428 U.S. at 453–54, 96 S.Ct. 3021; *Jonas v. City of Atlanta,* 647 F.2d 580, 588 (5th Cir.1981).

Balancing these factors, the Supreme Court has rejected application of the exclusionary rule in administrative immigration, tax court, and grand jury proceedings. *See, respectively, I.N.S. v. Lopez–Mendoza,* 468 U.S. 1032, 1050, 104 S.Ct. 3479, 82 L.Ed.2d 778 (1984); *Janis,* 428 U.S. at 459–60, 96 S.Ct. 3021; *Calandra,* 414 U.S. at 354, 94 S.Ct. 613. The exclusionary rule continues to apply in federal civil forfeiture proceedings. *See, e.g., Wren v. Towe,* 130 F.3d 1154, 1158 (5th Cir.1997) (per curiam) (recognizing that exclusionary rule applies in forfeiture proceedings because forfeiture is criminal or quasi-criminal sanction).

### 2. Other Civil Forfeiture Proceedings in Texas

The Texas Supreme Court has yet to decide the applicability of the exclusionary rule in civil forfeiture proceedings brought under chapter 59. *Hardy v. State,* 102 S.W.3d 123, 129 n. 3 (Tex.2003) (*citing $217,590,* 18 S.W.3d at 632 n. 1); *1986 Dodge 150 Pickup,* 129 S.W.3d at 181–83. One Texas court of appeals has applied the exclusionary rule to a tax proceeding. *Vara v. Sharp,* 880 S.W.2d 844, 850–52 (Tex.App.-Austin 1994, no writ). The *Vara* court analyzed the Texas Controlled Substances Tax Act and determined it was penal in nature and required operation of the exclusionary rule under the Texas Constitution, if not under the Fourth Amendment, to protect Texas citizens from unlawful seizure. *Id.* at 853.

### D. Analysis of Chapter 59

Unlike the Texas Controlled Substances Tax Act, the forfeiture provisions of chapter 59 are remedial, not punitive. Tex. Code Crim. Proc. Ann. art. 59.05(e). Also, unlike the suppression mechanism by which illegally seized evidence is excluded in criminal cases, chapter 59 does not impose an initial burden on the owner of seized property to rebut a presumption of forfeitability. To the contrary, a dismissal or acquittal in any underlying criminal case creates a presumption of nonforfeitability that the State must overcome. Tex. Code Crim. Proc. Ann. art. 59.05(d). Dismissal or acquittal can result if the illegally obtained evidence is suppressed in the underlying criminal case. Thus, chapter 59 contains an internal procedural mechanism that gives effect to the exclusionary rule to that extent when it is applied in an underlying criminal case.

Further, even when no criminal prosecution parallels the forfeiture proceeding, as here, the State bears the initial burden of proving both probable cause to seize the property and its contraband nature. Tex. Const. art. I, § 9; Tex.Code Crim. Proc. Ann. art. 59.01(2); *$11,014,00,* 820 S.W.2d

at 784. Moreover, I conclude that the State also bears the burden of producing a warrant or proving one of the exceptions to the warrant requirement in article 59.03. *See $217,590,* 18 S.W.3d at 634 n. 4. The only circumstance in which the burden shifts from the State is when an innocent owner asserts an affirmative defense. TEX.CODE CRIM. PROC. ANN. art. 59.02(c). Even then, I interpret the statute to provide that the burden shifts to the innocent owner only when the State has met its burden to produce evidence: (1) to overcome any presumption of nonforfeitability that arises from disposition of an underlying criminal case; (2) of a reasonable belief that a substantial connection exists between the seized property and proscribed criminal activity; (3) that the seized property is contraband; and (4) that the property was seized either pursuant to a warrant or under an exception to article 59.03's warrant requirement. Finally, even if the State satisfies each of these burdens, the forfeiture is still subject to constitutional challenge as disproportionate under the Excessive Fines Clause. *See 1996 Dodge,* 122 S.W.3d at 427.

Because of its remedial nature and internal Fourth Amendment protections, chapter 59 differs markedly from federal forfeiture statutes to which the exclusionary rule applies. *See, e.g.,* 18 U.S.C.S. § 981 (2003); 21 U.S.C.S. § 881 (2003). I also note that the evidentiary burdens created by chapter 59 differ from the burden imposed by the forfeiture provisions in article 18.18 of the code of criminal procedure. *See* TEX.CODE CRIM. PROC. ANN. art. 18.18 (Vernon Supp.2004). Article 18.18 expressly places the evidentiary burden on the person found in possession of allegedly illegal gambling equipment or other defined property to prove the property is not subject to forfeiture under the statute.

*Id.; Hardy,* 102 S.W.3d at 129 n. 3. I would conclude that chapter 59 provides greater protection against illegal police conduct than federal forfeiture statutes or article 18.18.

Accordingly, I agree with the majority that chapter 59 itself provides adequate deterrence to law enforcement and protection to the citizens of Texas. On this record, however, I would go further and hold that it does so without grafting onto the statutory scheme: (1) the exclusionary rule; or (2) a new pre-trial procedure, unique to civil forfeiture proceedings, in the form of a "motion to return" the seized property. The majority misconstrues my position when it labels as "questionable" my "conclusion that the exclusionary rule's application would have no deterrent effect." My conclusion is that no "significant protection" would be *added* by applying the exclusionary rule to these proceedings. *See Lopez–Mendoza,* 468 U.S. at 1045–46, 104 S.Ct. 3479; *see also Janis,* 428 U.S. at 458, 96 S.Ct. 3021. I would find that any additional deterrence achieved by applying the exclusionary rule would be minimal. *See Janis,* 428 U.S. at 454, 96 S.Ct. 3021.

Justice Abbot, in concurring in *$217,590,* questioned the applicability of the exclusionary rule to Texas civil forfeiture proceedings, urging civil litigants to raise the issue. *$217,590,* 18 S.W.3d at 636 (Abbott, J., concurring). These litigants have presented the issue to this Court for resolution. I would hold that the exclusionary rule does not apply to exclude illegally seized property in forfeiture proceedings brought under chapter 59 of the Texas Code of Criminal Procedure.[6]

There was a time in this nation when not having money was a criminal offense. Ultimately, vagrancy and other "status" laws

---

**6.** This case does not present, nor would I address, any question regarding application

of the exclusionary rule to illegally obtained evidence, other than the seized property, the

were declared unconstitutional. *See, e.g.,* *Papachristou v. City of Jacksonville,* 405 U.S. 156, 171, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972). Now, in our effort to rid society of illicit drugs, the antithesis has occurred. The possession of large sums of cash is now suspect. Nonetheless, I would conclude that when the Texas Legislature structured chapter 59, it was mindful that "[i]t makes sense to scrutinize governmental action more closely when the State stands to benefit." *See United States v. James Daniel Good Real Property,* 510 U.S. 43, 56, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993). The civil forfeiture procedures contemplated by chapter 59 provide that scrutiny. I would sustain the State's third issue and hold that the trial court erroneously dismissed the case for lack of subject-matter jurisdiction by applying the exclusionary rule.

## II. PRE–TRIAL PROCEDURE IN CIVIL FORFEITURE CASES

The majority assumes, in the absence of any objection from the State, that Tobin's

motion for return of the property is the correct procedural device to effectuate article 59.03. Thus, solely as the result of a procedural default, the majority sanctions an entirely new pre-trial procedure unknown to civil jurisprudence, not contemplated by article 59.03, and without any equivalent in the rules of civil procedure.[7]

I question whether a "motion to return" pre-trial procedure in civil forfeiture proceedings provides any greater protection from illegal seizure to the citizens of Texas than that provided by well-recognized summary judgment practice. To the contrary, by requiring the owner to file a "motion to return" rather than recognizing that the State bears the burden of proving the legality of the seizure, the procedure sanctioned by the majority provides less protection. Unfortunately, the majority opinion leaves civil forfeiture litigants with more questions than answers.[8] I am mystified why the majority refuses to address the only dispositive issue that was presented and argued by both parties to the trial

State may seek to introduce in a forfeiture proceeding under chapter 59.

7. The cases cited by the majority to justify its embrace of a "motion to return" practice are not persuasive. The first cited case is a criminal case in which the defendant sought suppression and return of evidence of a charged crime, not evidence seized under a civil forfeiture statute. *Machado v. State,* 112 Tex.Crim. 538, 17 S.W.2d 1060, 1060 (1929) (violation of liquor laws). In the second case, which was a civil forfeiture case, the "motion to return" filed by the owner was for "the return of her mobile telephone system that was in the Cadillac and was not included in the forfeiture." *One 1985 Cadillac Auto. v. State,* 805 S.W.2d 944, 946 (Tex.App.-Fort Worth1991, no pet.). In any event, the majority's analysis implies that any common-law "motion to return" practice in a civil forfeiture proceeding is somehow immune from operation of the rules of civil procedure. The result is what happened in this case: essentially a trial on the merits of the forfeiture,

leading to what is at its heart a sufficiency review of the evidence by the majority on appeal, without any of the procedural mechanisms attendant to a civil proceeding.

8. For example, must this new "motion for return" of the seized property be verified? What time limits apply to the State's response? May the movant reply? Within what time limits? Is the trial court required to hold a hearing? Do pre-trial discovery deadlines and time constraints on pleading amendments apply? Is live testimony required, or does the trial court decide the motion by affidavits? Which party bears the burden of proof? Which standard of proof applies, preponderance of the evidence or clear and convincing? What standard applies to our review on appeal? Finally, and most significantly, what preclusive effect does an order granting the "motion to return" and dismissing the case for want of jurisdiction have on the State's right to refile a forfeiture proceeding against the same property?

court, expressly served as the basis for the trial court's challenged actions, and was thoroughly briefed and argued to this Court on appeal. Tobin no more asked the trial court to ignore the exclusionary rule in deciding his "motion to return" than the State objected to the procedural mechanism by which Tobin sought return of the money.

To date, no case in Texas has delineated the State's evidentiary burdens under chapter 59. I would do so in this case. I also would hold that the proper pre-trial procedure to give effect to chapter 59's *built-in Fourth Amendment protections* is a summary judgment proceeding, not a suppression motion or a "motion for return" of the seized property. Specifically, since 1997, rule 166a(i) permits a party to a civil action to file a no-evidence summary judgment motion when there is no evidence of one or more essential elements of a claim or defense on which an adverse party has the burden of proof. TEX.R. CIV. P. 166a(i). Rule 166a(i) would operate, in appropriate cases, to put the State to its statutory burden to prove the legality of the police conduct by which the property was seized. If the State does not meet its burden, judgment in the forfeiture proceeding is rendered for the owner, just as in any other civil proceeding in which summary judgment is granted, and the seized property returned to its rightful owner. Creation of an entirely new pre-trial procedure peculiar to civil forfeiture proceedings is unnecessary. In no event would the case be dismissed for want of jurisdiction, which is what the challenged order did in this case. While I agree with the majority that the general rule of *in rem* jurisdiction is that the court's jurisdiction is dependent on its control over the *res*, I do not agree that the State's return of seized property in compliance with a judgment of nonforfeiture divests the trial court of jurisdiction. Unlike the majority,

I see no reason why disbursement of seized property should require different procedures than disbursement of other property over which a court exercises control pending its determination of competing claims. *See, e.g., Bryant v. United Shortline Inc. Assur. Servs., N.A.,* 972 S.W.2d 26, 29 (Tex.1998) ("The funds were located in Texas and the Bank tendered them into the Texas trial court's registry when it filed the interpleader. This gave the trial court jurisdiction over the funds to disburse them upon determining ownership.").

The parties have asked us to decide if dismissal for want of jurisdiction is proper in this case. I disagree that the State's failure to object to Tobin's motion for return of the property justifies the majority's reasoning in affirming the trial court's dismissal of the forfeiture proceeding for lack of jurisdiction. In affirming the order below, the majority effectively holds that dismissal for want of jurisdiction is the correct disposition of a forfeiture proceeding that results in a judgment of nonforfeiture. I would hold that it is not. *See 1996 Dodge,* 122 S.W.3d at 428 (reversing judgment of forfeiture and remanding to trial court with instructions to enter judgment in favor of owners and to order property returned).

### III. CONCLUSION

Unlike the majority, I would not reach the State's first two issues regarding the legality of Tobin's detention and the search of his vehicle. *See* TEX.R.APP. P. 47.1. I would reverse the trial court's dismissal for want of jurisdiction and remand the case for further proceedings consistent with this opinion.