**Robert Edward PINE (Approximately 15 Horses and 2 Head of Cattle), Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 14–94–00809–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

April 25, 1996.

Rehearing Overruled May 23, 1996.

George W. Lang, Houston, for appellant.

Brian K. Bricker, Angelton, for appellee.

Before LEE, HUDSON and EDELMAN, JJ.

## OPINION

HUDSON, Justice.

Livestock owned by Robert Edward Pine, appellant, were seized by law enforcement officers because of his alleged cruel treatment of the animals. Criminal and civil actions were brought against Pine that resulted in his conviction for cruelty to animals and the forfeiture of his affected livestock.[1] Fol-

---

1. Appellant was convicted by a jury of cruelty to animals under Tex. Penal Code Ann. § 42.11(a)(2)

lowing a hearing in justice court, the forfeiture case was tried de novo in county court where a jury found that Pine had treated his animals cruelly. The judgment divested Pine of ownership of the animals and ordered they be given to a nonprofit animal shelter. *See* TEX. HEALTH & SAFETY CODE ANN. § 821.023 (Vernon 1992). In this appeal from the civil forfeiture, Pine brings seven points of error. We affirm.

On January 28, 1993, Deputy Kevin Brumfield responded to an anonymous report of neglected animals on Pine's property. When Brumfield arrived, he observed several horses in good shape, and encountered four men standing on the road. After informing them of the nature of his visit, he asked if they knew of other animals on the property. Wayne Reid, later identified as Pine's employee, led Brumfield to a muddy back pasture that lacked sufficient grass for grazing. Livestock scattered throughout the field appeared unhealthy and underfed. Hoofprints surrounded an open trench full of liquid that smelled of sewage, and nearby Brumfield discovered a colt laying in the mud, too weak to stand.

Alarmed by the colt's condition, Brumfield drove to the Stevens and Pruett Humane Ranch seeking the services of a veterinarian. A short time later, Brumfield returned to Pine's property accompanied by James Pruett and Dr. Michael Brady, a veterinarian. Dr. Brady examined the colt and concluded that it was about 200 pounds underweight. He diagnosed the animal to be suffering from malnutrition and severe parasitism. Determining the colt's life to be in immediate danger, Dr. Brady recommended it be removed for intensive treat-

ment. Brumfield, Pruett, and Brady took the colt to the Stevens and Pruett Humane Ranch for treatment.

The following day, on January 29, Brumfield and an assistant district attorney went to the justice court with a motion and order to seize the remaining animals. That evening, the justice of the peace granted his motion and signed the order to seize Pine's livestock. On the morning of January 30, Brumfield returned to the property with several volunteers and seized the remainder of Pine's emaciated livestock. These animals were also delivered to the Stevens and Pruett Humane Ranch. A civil forfeiture hearing was scheduled the following week.

Shortly before the forfeiture hearing was scheduled to begin, the State's attorney asked the judge to dismiss the State's cause of action, issue a warrant authorizing seizure of the animals that had already been removed from Pine's property, and restart the forfeiture action under a new cause number.[2] Acceding to the State's request, the justice of the peace filled out and signed a "form" warrant. The original cause of action was dismissed. Pine was served in the courtroom with the "new" warrant, and the forfeiture hearing was convened under a new cause number. At the close of evidence, Judge Christian concluded that Pine's animals had been cruelly treated and should be given to a nonprofit animal shelter.

Pine appealed to the county court, where a trial de novo again resulted in a forfeiture of the animals. The jury found the animals had been cruelly treated, and the court ordered that they be given to the Stevens and Pruett Humane Ranch, a nonprofit animal shelter.

(Vernon 1989). This Court affirmed that conviction in *Pine v. State*, 889 S.W.2d 625 (Tex.App.— Houston [14th Dist.] 1994, pet. ref'd), *cert. denied,* —— U.S. ——, 116 S.Ct. 300, 133 L.Ed.2d 206 (1995).

**2.** The animal seizure law provides:
 (a) If a county sheriff, constable, or deputy constable or an officer who has responsibility for animal control in a municipality has reason to believe that an animal has been or is being cruelly treated, he may apply to a justice court in the county or to a municipal court in the municipality in which the animal is located for a *warrant* to seize the animal.

TEX. HEALTH & SAFETY CODE ANN. § 821.022(a) (Vernon 1992) (Emphasis added).
 Pine's livestock were initially seized pursuant to a court order. Although Brumfield executed an affidavit alleging probable cause for the seizure, the court's order made no reference to the affidavit. Facially, at least, Brumfield's affidavit and the court's order appear unrelated. Uncertainty regarding the validity of the seizure may have led the State to seek dismissal of the original cause of action. In any event, the pleadings in the first and second cases are identical.

### JURISDICTION OF THE COUNTY COURT

 In · his first point of error, Pine contends the county court erred in refusing to dismiss this case for lack of jurisdiction. Relying upon several theories, Pine first maintains the State's dismissal of the original cause of action constituted an abandonment of its seizure of the animals. When the State obtained a "new" warrant, Pine claims the State was obliged to reseize the animals under the authority of the warrant. The jurisdiction of a court in a forfeiture action is dependent on the court's control over the res. *Costello v. State*, 774 S.W.2d 722, 723 (Tex. App.—Corpus Christi 1989, writ denied). Without a new seizure, Pine argues the justice court had no jurisdiction. Because the justice court was without jurisdiction, Pine contends the county court had no appellate jurisdiction.

 In an in rem forfeiture action, the property in question must be under the court's control when the action is initiated. Once established, jurisdiction is not generally dependent on the court's continued control over the res. Sometimes, however, events may occur after the initial seizure that can destroy the jurisdiction of the court. *Republic Nat'l Bank v. United States*, 506 U.S. 80, 85–89, 113 S.Ct. 554, 558–59, 121 L.Ed.2d 474 (1992). These events are rare, and only once has the United States Supreme Court found post seizure events sufficient to break the jurisdictional bonds in a forfeiture case. *The Brig Ann*, 13 U.S. (9 Cranch) 289, 290, 3 L.Ed. 734 (1815). In *The Brig Ann*, the res was released by written order before the forfeiture action was commenced.[3]

3. In *The Brig Ann*, a ship was seized in Long Island Sound and taken to the port of New Haven. There the collector took possession of the brig as property forfeited to the United States. Later, the collector gave written orders directing the release of the ship and its cargo. Before the ship could sail, however, the district court issued an information, and the ship was taken into possession by the marshal. The Supreme Court held that since the seizure was voluntarily abandoned before the libel against the ship was filed and allowed, the District Court had no jurisdiction.

Writing for the court in *Republic Nat'l Bank*, Justice Blackmun stated:

Here, the seizing party never gave any indication, written or otherwise, that it intended to release the animals from the seizure. Unlike *The Brig Ann*, no order was given to release the seized property; the animals remained in the actual, continuous possession and control of the shelter where Deputy Brumfield had· impounded them.[4] Once the property was seized by the order of the court and brought within its control, in rem jurisdiction was established. *Republic Nat'l Bank*, 506 U.S. at 85, 113 S.Ct. at 558.

 Pine also contends under his first point of error that the court lacked jurisdiction due to the warrantless seizure of his livestock. The argument is without merit. While an unlawful seizure may result in the suppression of evidence, it does not deprive a court of jurisdiction. The seizure of Pine's livestock, whether lawful or unlawful, brought the animals under the control of the trial court. The court had jurisdiction to consider a suit in rem.

 Additionally, Pine claims the State's failure to notify him in writing of the time and place of the hearing deprived the court ·of jurisdiction. Any complaints surrounding the failure to give notice were waived by appellant's appearance at the hearing with counsel and witnesses. TEX.R.CIV.P. 120, *Gonzalez v. Phoenix Frozen Foods, Inc.*, 884 S.W.2d 587, 589 (Tex.App.—Corpus Christi 1994, no writ).

 Finally, Pine argues the court lacked jurisdiction because Brumfield filed an incorrect return with the "new" warrant. It is well settled that an officer's failure to

Fairly read, *The Brig Ann* simply restates the rule that the court must have actual or constructive control of the res when an *in rem* forfeiture suit is initiated. If the seizing party abandons the attachment prior to filing an action, it, in effect, has renounced its claim. The result is "to purge away all the prior rights acquired by the seizure," and, unless a new seizure is made, the case may not commence.

*Republic Nat'l Bank*, 506 U.S. at 86, 113 S.Ct. at 559 (citations omitted).

4. The animal seizure statute directs the seizing officer to cause the animal to be impounded pending a hearing on the matter. TEX. HEALTH & SAFETY CODE ANN. § 821.022(c) (Vernon 1992).

make a return on a warrant will not vitiate the warrant. *Phenix v. State,* 488 S.W.2d 759, 766 (Tex.Crim.App.1972). It follows, therefore, that a return containing incorrect information will not invalidate the warrant. *Id.* The propriety of the return is immaterial to the disposition of this cause. Appellant's first point of error is overruled.

### RES JUDICATA

In his second point of error, Pine contends the voluntary dismissal of the State's case in the justice court was conclusive on the merits. He argues the doctrine of res judicata required the trial court to grant his motions for summary judgment and judgment n.o.v. It is well established, however, that if a suit is dismissed without prejudice, or if the plaintiff takes a voluntary nonsuit, res judicata does not impede subsequent actions. *Bell v. Moores,* 832 S.W.2d 749, 755 (Tex.App.—Houston [14th Dist.] 1992, writ denied); *Moore v. Texas Oil and Gas Corp.,* 580 S.W.2d 133, 136–37 (Tex.Civ. App.—Waco 1979, writ ref'd n.r.e.); *Transamerica Ins. Co. v. Frost Nat'l Bank,* 501 S.W.2d 418, 422 (Tex.Civ.App.—Beaumont 1973, writ ref'd n.r.e.). Further, a judgment in a justice of the peace court is not res judicata and does not constitute a basis for estoppel by judgment in a proceeding in a county court. TEX.CIV.PRAC. & REM.CODE ANN. § 31.005 (Vernon 1986). Appellant's second point of error is overruled.

### STATUTORY COMPLIANCE

In his third point of error, Pine contends his motions for summary judgment, for directed verdict, and for judgment n.o.v. should have been granted because the State failed to procure a valid warrant for its initial seizure of the livestock.

Both the state and federal constitutions guarantee freedom from unreasonable searches and seizures. U.S. CONST. amend. IV; TEX. CONST. art. 1, § 9. A warrantless seizure is presumptively unreasonable. *Horton v. California,* 496 U.S. 128, 133, 110 S.Ct. 2301, 2309, 110 L.Ed.2d 112 (1990); *Moss v. State,* 878 S.W.2d 632, 641 (Tex.App.—San Antonio 1994, pet. ref'd). In a criminal prosecution, the remedy for an unreasonable search and seizure is suppression of all evidence obtained by virtue of the unlawful search. *Mapp v. Ohio,* 367 U.S. 643, 656, 81 S.Ct. 1684, 1692, 6 L.Ed.2d 1081 (1961). The applicability of the exclusionary rule in civil cases, however, is uncertain. *See Vara v. Sharp,* 880 S.W.2d 844, 848–49 (Tex. App.—Austin 1994, n.w.h.); *Baxter v. Texas. Dep't of Human Resources,* 678 S.W.2d 265, 267 (Tex.App.—Austin 1984, no writ). Further, Pine does not identify specific evidence that should have been suppressed under the exclusionary rule. Rather, he simply contends the initial unlawful seizure of the animals precludes any subsequent action for forfeiture of the livestock.

Because of the "quasi-criminal" nature of forfeiture proceedings, the exclusionary rule may bar the introduction of specific evidence that was unlawfully acquired. *One 1958 Plymouth Sedan v. Commonwealth of Pennsylvania,* 380 U.S. 693, 700–02, 85 S.Ct. 1246, 1250–51, 14 L.Ed.2d 170 (1965). However, the unlawful seizure of the res will not defeat its forfeiture where the State submits lawfully acquired evidence of its forfeitable character.

It is one thing to deny the government the use, in a trial, of evidence arrived at as a result of illegal procedures, and another to divest the government of property to which it is entitled on the basis of *legally* obtained proof simply because of a purported initial misstep in the government's mode of taking temporary possession.

*United States v. One 1975 Pontiac Lemans,* 621 F.2d 444, 450–51 (1st Cir.1980). *See also United States v. Carey,* 272 F.2d 492, 494–95 (5th Cir.1959); *Grogan v. United States,* 261 F.2d 86, 87–88 (5th Cir.1958), cert. denied, 359 U.S. 944, 79 S.Ct. 725, 3 L.Ed.2d 677 (1959). Thus, even without a warrant, the State may proceed with its claim if there is sufficient evidence, apart from that gained by the seizure, to support the forfeiture. *United States v. Monkey,* 725 F.2d 1007, 1012 (5th Cir.1984).

Additionally, Pine argues that the legislative history of the animal protection statute suggests a disfavor of warrantless seizures by animal protection agencies.

The Legislature, however, has also evidenced a willingness, even if conditional, to view animals as something more than personal property subject to the vicissitudes of an owner's rage, abuse, or neglect. TEX. HEALTH & SAFETY CODE ANN. § 821.022 (Vernon 1992). *See also* OP.TEX.ATT'Y GEN. No. JM–294 (1984). A procedural error committed by the State while initially securing temporary possession of animals whose cruel treatment and forfeitable status is proven by competent evidence should not override the statute's primary goal of protecting the welfare of the animals. *See Crimmins v. Lowry,* 691 S.W.2d 582, 584 (Tex.1985); *State v. Terrell,* 588 S.W.2d 784, 786 (Tex.1979).

Pine fails to direct us to any evidence that may have been the product of an unlawful seizure. Even if we were to find that the initial seizure was unlawful and that some of the evidence offered at trial was tainted by the unlawful seizure, there is sufficient evidence unconnected to the seizure to support the jury's finding.[5] Accordingly, appellant's third point of error is overruled.

### DUE PROCESS

In his fourth point of error, Pine asserts that the State's failure to obtain a proper warrant deprived him of his property without due process of law in violation of the Fourteenth Amendment to the United States Constitution and Article I, Section 19 of the Texas Constitution. Thus, it was error to deny his motions for summary judgment, directed verdict, and judgment n.o.v.

Fundamental to the concept of due process is the right to be heard. *Fuentes v. Shevin,* 407 U.S. 67, 80, 92 S.Ct. 1983, 1994, 32 L.Ed.2d 556 (1972). The right to be heard assures a full hearing before a

court having jurisdiction of the matter, the right to introduce evidence at a meaningful time and in a meaningful manner, and to have judicial findings based upon that evidence. *Derbigny v. Bank One,* 809 S.W.2d 292, 295 (Tex.App.—Houston [14th Dist.] 1991, no writ). It includes also an opportunity to cross-examine witnesses, to be heard on questions of law, and the right to have judgment rendered after trial. *Id.*

In this case, Pine received a hearing on the animal cruelty question within the 10 day period prescribed by statute. TEX. HEALTH & SAFETY CODE ANN. § 821.022(b) (Vernon 1992). He was represented by counsel, examined witnesses, and offered evidence. He received a full hearing before the court divested him of ownership. His complaints in this point of error again relate solely to the State's initial seizure of the animals. As stated above, we are persuaded by the long line of cases holding that procedural missteps in the government's initial seizure of property are not a defense to forfeiture if admissible evidence exists to support the cause of action. The trial court did not err in overruling Pine's motions, and his fourth point of error is overruled.

### FOURTH AMENDMENT PROTECTIONS

In his fifth point of error, Pine contends the trial court erred in refusing to grant his motions for summary judgment, directed verdict, and judgment n.o.v. because the evidence showed the animals were seized without a warrant contrary to the Fourth Amendment of the United States Constitution and Article I, Section 9 of the Texas Constitution.

---

**5.** Much of the State's evidence consisted of observations of Pine's livestock attained after trespassing upon his property. It is well established, however, that law enforcement officers may enter and search an open field without a warrant. *See United States v. Dunn,* 480 U.S. 294, 303–04, 107 S.Ct. 1134, 1141, 94 L.Ed.2d 326 (1987); *Oliver v. United States,* 466 U.S. 170, 173, 104 S.Ct. 1735, 1738, 80 L.Ed.2d 214 (1984); *Goehring v. State,* 627 S.W.2d 159, 162–63 (Tex.Crim. App.1982); *Rosalez v. State,* 875 S.W.2d 705, 713 (Tex.App.—Dallas 1993, pet. ref'd); *Rogers v. State,* 760 S.W.2d 669, 671 (Tex.App.—Tyler

1988, pet. ref'd). The seizure of the colt was justified by exigent circumstances. The seizure of the remaining animals was accomplished with a court order that was obtained after Brumfield executed an affidavit setting forth probable cause for his belief that the animals were being cruelly treated. While this "warrant" did not comply with requirements of Article 18.04 of the Code of Criminal Procedure, good faith reliance on the magistrate's order could constitute an exception to the exclusionary rule. *United States v. Leon,* 468 U.S. 897, 922–23, 104 S.Ct. 3405, 3420–21, 82 L.Ed.2d 677 (1984).

 Although the law of forfeiture cannot escape the protections of the Fourth Amendment,[6] the constitution does not provide sanctuary for an owner of forfeited property where the judgment of forfeiture is supported by admissible evidence.[7] Here, the seizure of the colt on January 28 was authorized under the emergency doctrine. *Pine*, 889 S.W.2d at 631. The seizure of the remainder of the animals was carried out two days later pursuant to the judge's order to seize animals. This seizure, if not unlawful, was certainly irregular. However, even if the seizure was unlawful, the State's right to claim the property through forfeiture proceedings is not barred. *United States v. One 1978 Mercedes Benz*, 711 F.2d 1297, 1302–03 (5th Cir.1983); *Monkey*, 725 F.2d at 1012.

 The exclusion of tainted evidence at a forfeiture proceeding is grounded in the Fourth Amendment. *One 1978 Mercedes Benz*, 711 F.2d at 1303. Pine, however, makes no complaint on appeal regarding tainted evidence and cites to no evidence in the record that was erroneously admitted. Appellant's fifth point of error is overruled.

### SUFFICIENCY OF THE EVIDENCE

 Pine contends in his sixth point of error that the trial court erred in denying his motions for directed verdict and judgment n.o.v. because the State failed to produce legally or factually sufficient evidence to support the jury's finding that the animals had been cruelly treated. When an appellant attacks the legal sufficiency of an adverse finding of an issue on which he did not have the burden of proof, he must demonstrate on appeal that there is no evidence to support the adverse finding. *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex.1983). On review, this Court will consider only the evidence and inferences that tend to support the finding, and disregard all evidence and inferences to the contrary. *Weirich v. Weirich*, 833 S.W.2d 942, 945 (Tex.1992). If there is any evidence of probative force to support

the finding, the point must be overruled and the finding upheld. *Southern States Transp., Inc. v. State*, 774 S.W.2d 639, 640 (Tex.1989). When reviewing a complaint that the evidence is factually insufficient to support a jury finding, this Court will consider all of the evidence that supports the finding as well as that which is contrary to it. *Plas–Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex.1989). This Court will set aside the verdict only if the evidence is so weak as to be clearly wrong or manifestly unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986).

In this case, much of the State's evidence was derived from the on-scene observations by Deputy Brumfield and Dr. Brady. Brumfield testified to the emaciated condition of the colt and of the muddy pasture where it was found. He also described a cow whose bones were very visible and a mare who was in bad condition. While the other animals he observed scattered around the pasture were not in as dire condition as the colt, all appeared underfed and their ribs were visible.

Dr. Brady also testified to the extreme condition of the colt. He stated that it was very dehydrated, emaciated, and so weak that it could not stand. He described seeing a mare that, while still standing, was in a similar state to the colt. Dr. Brady determined that the animals had not received proper nutrition or worm medication and were suffering from malnutrition and acute parasitism.

Kathryn McCoy, a veterinary technician, also observed the animals while on Pine's property. She testified to seeing a horse covered with ringworm and suffering from the worst intestinal worm infestation she had ever seen. She described a cow with festering sores on its hips that were infected with maggots. This animal fell repeatedly and was so weak that it had to be lifted into a trailer with a backhoe. McCoy also observed a bull that was about two hundred pounds underweight.

---

6. *One 1958 Plymouth Sedan*, 380 U.S. at 700–02, 85 S.Ct. at 1250–51.

7. Article 1, Section 9 of the Texas Constitution is to be interpreted in a manner consistent with the Fourth Amendment of the United States Constitution. *Aitch v. State*, 879 S.W.2d 167, 172 (Tex. App.—Houston [14th Dist.] 1994, pet. ref'd).

In his defense, Pine presented evidence of the different types of grasses he had planted, feeding schedules, the water sources on the property, his barn, his farm machinery, and the animal care equipment and medicine that he owned. He presented a group of canceled checks dating from 1989 that showed payments to various feed stores, mowing services, farm supply stores, and veterinarians. Pine further testified that there was hay in the barn, and that he left his employee Randy Cole in charge of the animals while he was away. However, Dr. Brady testified that in wintertime, a horse should be fed about 11 pounds of grain and a third of a bale of hay each day. The men Brumfield spoke with as he entered the property indicated that they had been feeding a total of only two bales per day for all 11 horses and two cows. Pine conceded on cross examination that it would not surprise him to hear that Randy Cole had said his instructions were to give the herd of animals a total of only fifty pounds of feed per day.

Reviewing all the evidence, we find that it is neither legally nor factually insufficient. Appellant's sixth point of error is overruled.

### JURY INSTRUCTIONS

In his final point of error, Pine contends the trial court erred in its charge by referring to the animals collectively rather than presenting the issue of whether each individual animal had been cruelly treated. Because the jury did not hear evidence relating specifically to the condition of each and every animal, Pine argues the group instruction was erroneous. He suggests a special issue should have been submitted with regard to each and every animal.

The trial court is afforded considerable discretion in submitting issues to the jury. *See* TEX.R.CIV.P. 277. *Mobil Chem. Co. v. Bell*, 517 S.W.2d 245, 256 (Tex.1974); *Varme v. Gordon*, 881 S.W.2d 877, 881 (Tex. App.—Houston [14th Dist.] 1994, writ denied). The standard for reviewing a jury charge is whether the trial court abused its discretion and acted without reference to any guiding principle. *Texas Dep't of Human Serv. v. E.B.*, 802 S.W.2d 647, 649 (Tex.1990). Nevertheless, if there is evidence to support the submission of a special issue, the refusal to do so constitutes reversible error. *Southwestern Bell Tel. Co. v. Thomas*, 554 S.W.2d 672, 674 (Tex.1977).

Pine claims the evidence at trial fails to show that all of the animals were in the same condition or at the same location, thus the group instruction was erroneous. However, Deputy Brumfield testified that he observed approximately 14 animals on the property. Of those, all 14 appeared malnourished. Likewise, Peggy Royster testified that all the horses brought to the shelter were malnourished. Kathryn McCoy provided testimony regarding the poor condition of both cows. Pine fails to point out any evidence showing that some animals may have been treated differently from the others. *See Mills v. State*, 802 S.W.2d 400, 404 (Tex.App.—Houston [1st Dist.] 1991, pet. ref'd) (holding that where a defendant offered nothing to show that any of her animals were treated differently, her ability to defend against cruelty charges was not impaired merely because she did not understand which of her many animals were the subject of the indictment). We therefore find that there is no evidence to support the submission of a special issue on each animal. Appellant's seventh point of error is overruled.

The judgment of the trial court is affirmed.