In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-09-00214-CR

                                                ______________________________

 

 

                                   CAROL MARIE PASELK,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                            On Appeal from the County Court at Law

                                                           Hopkins County, Texas

                                                        Trial Court
No. CR0926723

 

                                                              
                                    

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                            Memorandum Opinion by Justice Moseley








                                                     MEMORANDUM 
OPINION

 

            Carol
Marie Paselk appeals her conviction by a jury of cruelty to a bay male horse.[1]  Paselk was sentenced to 365 days’ confinement
in the Hopkins County Jail and a fine of $250.00.  The trial court suspended the sentence and
placed her on community supervision for a term of two years.  She alleges that:  (1) the evidence was legally and factually
insufficient; (2) the seizure of fifty-eight horses was unreasonable; and (3)
her counsel rendered ineffective assistance in failing to challenge testimony
from purported expert witnesses.  We
affirm the trial court’s judgment.  

I.          Evidence Was Legally
and Factually Sufficient to Support Paselk’s Convictions 

            We
will review the legal and factual sufficiency of the evidence supporting Paselk’s
conviction under well-established standards. 
In conducting a legal sufficiency review, we consider the evidence in
the light most favorable to the verdict to determine whether any rational jury
could have found the essential elements of cruelty to a bay male horse beyond a
reasonable doubt.  Sanders v. State,
119 S.W.3d 818, 820 (Tex. Crim. App. 2003). 
We defer to the jury’s responsibility “to fairly resolve conflicts in
testimony, to weigh the evidence, and to draw reasonable inferences from basic
facts to ultimate facts.”  Hooper v.
State, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing Jackson v.
Virginia, 443 U.S. 307, 318–19 (1979)). 
We are not required to determine whether we believe that the evidence at
trial established guilt beyond a reasonable doubt; rather, when faced with
conflicting evidence, we presume that the jury resolved any such conflict in
favor of the prosecution, and we defer to that resolution.  State v. Turro, 867 S.W.2d 43, 47
(Tex. Crim. App. 1993).  

            In
conducting a factual sufficiency review, we consider the evidence in a neutral
light.  Watson v. State, 204
S.W.3d 404, 414–15 (Tex. Crim. App. 2006). 
The verdict will be set aside only if (1) it is so contrary to the
overwhelming weight of the evidence as to be clearly wrong and manifestly
unjust, or (2) it is against the great weight and preponderance of the
evidence.  Id. at 415 (citing
Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000)).  Both legal and factual sufficiency are
measured by the elements of the offense as defined by a hypothetically-correct
jury charge.  Malik v. State, 953
S.W.2d 234, 240 (Tex. Crim. App. 1997); see also Grotti v. State, 273
S.W.3d 273, 280 (Tex. Crim. App. 2008).  


            Under
a hypothetically-correct charge in this case, the jury was required to find,
beyond a reasonable doubt, that Paselk intentionally or knowingly failed to
provide necessary food, water, or care for the bay male horse while it was in
her custody.  Tex. Penal Code Ann. § 42.09 (Vernon Supp. 2009).  

            Melanie DeAeth,
founder of the True Blue Animal Rescue, received a concerned telephone call
regarding Paselk’s horses and contacted her to determine if she needed
assistance.  Paselk, unemployed since
2005, admitted she did not have the finances to feed her fifty-eight
horses.  DeAeth and two other rescue
groups agreed to temporarily provide assistance upon Paselk’s promise to find
new homes for the horses.  Three months
later, after several proposed placements for the horses were secured, Paselk
refused to allow the adoption of the horses. 


            True
Blue volunteer Pamela Dountas visited Paselk’s home several times.  Dountas noted that the horses were extremely
thin, had lost their hair, and that some were wounded, infected with worms, and
were standing in feces in a dark, enclosed area.  During her first visit, Dountas did not see
any grass on the pasture and could only count eight small square bales of hay
to feed the fifty-eight horses.  Four
subsequent visits revealed no hay and lack of water.  Dountas believed the horses had gone hungry
for a year and knew the stalls had not been cleaned for six months.  She took pictures of the living conditions of
Paselk’s horses and delivered them to DeAeth. 


            DeAeth
testified Paselk’s horses endured “some of the . . . most gross neglect cases
of hoof work that I have ever seen,” were not wormed, and did not receive
adequate dental care.  DeAeth claimed
Paselk “said things like . . . if God wanted them to have food, they will have
food.  If God doesn’t help her provide
food, then they will die. . . .  I mean,
she said things like that she would go out and just shoot them all and be done
with it.”  Law enforcement was
immediately informed of the situation.  

            Sergeant
Tanner Crump went to Paselk’s property. Though initially belligerent, she
eventually allowed him to examine the horses.  Crump also took photographs of the horses and,
at the direction of his supervisor, made the decision to seize them.  The rescue groups aided Officer Ricky Morgan
in the seizure of the horses.  Again, it
was noted that the horses were “in horrible condition.  There was one horse that had passed away . .
. there was other horses that couldn’t walk . . . . They had bad farrier issues.
. . . There were horses that just . . . starved.  The horses stood in small, wet pens.  There was horses in three feet of manure that
was as high as their water barrels, standing in manure, starving, thin.”  Some horses had no ventilation or daylight.  Exhibit pictures demonstrate the water buckets
were also full of manure.  

            The
fifteen-year-old male bay horse, Sammie, was approximately 300 pounds
underweight, and had rain rot and intestinal parasites.  His hooves had not been trimmed “at least in
two years,” and he was in need of dental care. 
Veterinarian Richard Garner diagnosed Sammie with conjunctivitis in both
eyes.  

            We
conclude that a rational jury could find beyond a reasonable doubt that Paselk
intentionally or knowingly failed to provide necessary food, water, medical,
and/or dental care for Sammie while he was in Paselk’s custody.  Tex.
Penal Code Ann. § 42.09.

            Paselk
testified on her own behalf and surmised that some of her horses became sick
due to toxic dairy runoff from a neighboring property.  Because Paselk could not obtain employment
and could not sell the property due to environmental issues, she was placed in the
difficult situation of having to take care of the horses without income.  Paselk admitted that she could not feed the
horses “optimally,” but justified her actions by telling the jury she received
rescue aid and attempted to organize fundraisers.  Paselk claimed that her stalls flooded with
water and that because she did not want the horses to stand in water or mud,
she allowed manure to build up in the stalls to reduce the water flow.  Even considering this evidence in a neutral
light, we cannot say that the jury’s verdict was clearly wrong, manifestly
unjust, or against the great weight and preponderance of the evidence.  

            Because we find
the evidence both legally and factually sufficient, we overrule Paselk’s first
point of error.  

II.        Complaints of
Unreasonable Seizure Were Not Preserved

            Paselk complains that
not all of the fifty-eight horses that were seized were in sufficiently poor
health to justify their seizure by officials.[2]  As closely as we can discern this point,
Paselk appears to maintain that the fact that all of the horses were seized
tainted the criminal abuse/neglect trial because the jury may have concluded
that all the horses were as malnourished and unhealthy as the two horses with
which she was charged with neglect or abuse.  Paselk attempts to draw some kind of parallel
of this case to Pine v. State, 921 S.W.2d 866 (Tex. App.––Houston [14th
Dist.] 1996, pet. dism’d w.o.j.).  One
major problem with that attempted parallel is that the Pine case
involves a civil forfeiture case and is not a criminal proceeding; the question
in Pine was whether all the horses the subject of those forfeiture
proceedings were properly seized for forfeiture.  This is a criminal abuse or neglect case and
not a property forfeiture case; other than the fact that the Pine case
also involves abused or neglected equines, it provides no parallels. 

            Paselk’s
brief does not demonstrate or allege a complaint regarding the seizure which
involves an action taken by the trial court in this criminal case.  As a prerequisite to presenting a complaint
for our review, Paselk must have made a complaint to the trial court below
about the allegedly unreasonable seizure or objections to references to such
seizure by a timely request, objection, or motion, which was ruled on by the
trial court expressly or implicitly, or which it refused to rule on.  Tex.
R. App. P. 33.1.[3]  There were neither complaints of unreasonable
seizure of the other horses, nor attempts to bar mention of them made to the
trial court, and Paselk’s motion for new trial makes no reference to this point
of error.  Because Paselk’s complaints
were made for the first time on appeal, they were not preserved.  

            We
overrule this point of error.  

III.       No Showing of
Ineffective Assistance of Counsel 

            Last, Paselk argues
that counsel was ineffective because he failed to question the qualifications
of the State’s expert witnesses.  Any allegation of ineffectiveness must be firmly founded in the
record.  Wallace v. State, 75
S.W.3d 576, 589 (Tex. App.—Texarkana 2002), aff’d, 106 S.W.3d 103
(Tex. Crim. App. 2003); see Goodspeed v. State, 187 S.W.3d 390,
392 (Tex. Crim. App. 2005); Thompson v. State, 9 S.W.3d 808, 813 (Tex.
Crim. App. 1999).  From the record
received by this Court, which does not include counsel’s reasons for the
alleged failures, Paselk bears the burden of proving that counsel was
ineffective by a preponderance of the evidence. 
Goodspeed, 187 S.W.3d at 392; Thompson,
9 S.W.3d at 813; Cannon v. State, 668 S.W.2d 401, 403 (Tex. Crim.
App. 1984).  We apply the two-pronged Strickland
test handed down by the United States Supreme Court to determine whether Paselk received ineffective assistance of counsel.  Strickland v. Washington, 466
U.S. 668 (1984).  Failure to satisfy
either prong of the Strickland test is fatal.  Ex parte Martinez, 195 S.W.3d
713, 730 (Tex. Crim. App. 2006).  

            First, Paselk must show counsel’s performance fell below an objective standard of
reasonableness when considering prevailing professional norms.  Strickland, 466 U.S. at 687–88.  There is a strong presumption that counsel’s
conduct fell within the wide range of reasonable professional assistance and
that the challenged action could be considered sound trial strategy.  Id. at 689; Ex parte White, 160
S.W.3d 46, 51 (Tex. Crim. App. 2004); Tong v. State, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000).
 Therefore, we will not second guess the
strategy of Paselk’s counsel at trial
through hindsight.  Blott v. State,
588 S.W.2d 588, 592 (Tex. Crim. App. 1979); Hall v. State, 161
S.W.3d 142, 152 (Tex. App.—Texarkana 2005, pet. ref’d).  In this case, since the record is silent as
to why counsel failed to make an objection to the State’s expert witnesses, we
will assume it was due to any strategic motivation that can be imagined.  Mata v. State, 226 S.W.3d 425, 431
(Tex. Crim. App. 2007); Garcia v. State, 57 S.W.3d 436, 441 (Tex.
Crim. App. 2001); Fox v. State, 175 S.W.3d 475, 485–86 (Tex.
App.—Texarkana 2005, pet. ref’d). 

            We first point out
that counsel filed a “Motion for Voir Dire of Expert Witnesses” and moved the
trial court “to conduct a hearing prior to trial and outside the presence of
the jury to determine the preliminary question of the qualification of all
expert witnesses upon which the state intends to rely at trial.”  While the motion was granted, no voir dire
was conducted.   Veterinarian
Clifton Bradshaw,[4] a
veterinarian for twenty years, owned the Lake Country Animal Care Clinic in
Mineola.  The other expert,
Garner, had been a practicing veterinarian for twenty-three years.  We may presume that counsel chose not to
contest the qualifications of the State’s witnesses due to their long history
of experience.  Paselk cannot demonstrate
that her attorney’s actions fell below an objective standard of reasonableness.


            Further, to meet the
second prong of the Strickland test, Paselk must show that the deficient performance damaged her defense such that
there was a reasonable probability that the result of the trial would have been
different.  Mata, 226 S.W.3d at
429; Tong, 25 S.W.3d at 712.  A reasonable probability “is a probability sufficient
to undermine confidence in the outcome.” 
Mitchell v. State, 68 S.W.3d 640, 642 (Tex. Crim. App.
2002).   DeAeth’s and Dountas’s
testimony, coupled with exhibit pictures and Paselk’s own admissions that she
could not adequately take care of the horses, demonstrate that Paselk would not
be able to meet the second Strickland prong.  

            We
overrule Paselk’s last point of error.  

IV.       Conclusion


            We affirm the
trial court’s judgment. 

 

 

 

                                                                        Bailey
C. Moseley

                                                                        Justice

 

Date Submitted:          August 4, 2010

Date Decided:             August 5, 2010

 

Do Not Publish











[1]Paselk
appeals two convictions entered in separate causes by submitting a single
brief.  This cause number reflects her appeal
from conviction of cruelty to a bay male horse, while our companion cause
number 06-09-00215-CR addresses cruelty to a bay female horse.  Because Paselk’s single brief addresses
issues common to both appeals, we address them together in this opinion.   





[2]We
observe that Section 42.09(a)(2) of the Texas Penal Code makes it a crime to unreasonably
fail “to provide necessary food, water, or care for a livestock animal in the
person’s custody.”  Tex. Penal Code Ann. §
42.09(a)(2).  It does not require that
failure to cause the animal to become ill. 





[3]During pretrial
conference, Paselk’s counsel said he understood “that there’s more than two
horses involved in this case even though there was two charges” and that “of
course, there’s going to be mentioning that there was more than one horse,” but
asked the State to obtain the court’s permission prior to publication of
documentation or photographs of any horses other than Lacy and Sammie.  This motion in limine was granted and no
pictures of other horses were admitted.





[4]Bradshaw
testified about the condition of the female bay horse, which is the subject of
Paselk’s appeal in cause number 06-09-00215-CR.