

**In The**
**Court of Appeals**
**Sixth Appellate District of Texas at Texarkana**

_____

No. 06-09-00214-CR

_____

CAROL MARIE PASELK, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Court at Law
Hopkins County, Texas
Trial Court No. CR0926723

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Moseley

MEMORANDUM OPINION

Carol Marie Paselk appeals her conviction by a jury of cruelty to a bay male horse.[1] Paselk was sentenced to 365 days' confinement in the Hopkins County Jail and a fine of $250.00. The trial court suspended the sentence and placed her on community supervision for a term of two years. She alleges that: (1) the evidence was legally and factually insufficient; (2) the seizure of fifty-eight horses was unreasonable; and (3) her counsel rendered ineffective assistance in failing to challenge testimony from purported expert witnesses. We affirm the trial court's judgment.

## I.      Evidence Was Legally and Factually Sufficient to Support Paselk's Convictions

We will review the legal and factual sufficiency of the evidence supporting Paselk's conviction under well-established standards. In conducting a legal sufficiency review, we consider the evidence in the light most favorable to the verdict to determine whether any rational jury could have found the essential elements of cruelty to a bay male horse beyond a reasonable doubt. *Sanders v. State*, 119 S.W.3d 818, 820 (Tex. Crim. App. 2003). We defer to the jury's responsibility "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979)). We are not required to determine whether we believe that the evidence at trial established guilt beyond a reasonable

---

[1]Paselk appeals two convictions entered in separate causes by submitting a single brief. This cause number reflects her appeal from conviction of cruelty to a bay male horse, while our companion cause number 06-09-00215-CR addresses cruelty to a bay female horse. Because Paselk's single brief addresses issues common to both appeals, we address them together in this opinion.

doubt; rather, when faced with conflicting evidence, we presume that the jury resolved any such conflict in favor of the prosecution, and we defer to that resolution. *State v. Turro*, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993).

In conducting a factual sufficiency review, we consider the evidence in a neutral light. *Watson v. State*, 204 S.W.3d 404, 414–15 (Tex. Crim. App. 2006). The verdict will be set aside only if (1) it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust, or (2) it is against the great weight and preponderance of the evidence. *Id.* at 415 (citing *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000)). Both legal and factual sufficiency are measured by the elements of the offense as defined by a hypothetically-correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); *see also Grotti v. State*, 273 S.W.3d 273, 280 (Tex. Crim. App. 2008).

Under a hypothetically-correct charge in this case, the jury was required to find, beyond a reasonable doubt, that Paselk intentionally or knowingly failed to provide necessary food, water, or care for the bay male horse while it was in her custody. TEX. PENAL CODE ANN. § 42.09 (Vernon Supp. 2009).

Melanie DeAeth, founder of the True Blue Animal Rescue, received a concerned telephone call regarding Paselk's horses and contacted her to determine if she needed assistance. Paselk, unemployed since 2005, admitted she did not have the finances to feed her fifty-eight horses. DeAeth and two other rescue groups agreed to temporarily provide assistance upon Paselk's

promise to find new homes for the horses. Three months later, after several proposed placements for the horses were secured, Paselk refused to allow the adoption of the horses.

True Blue volunteer Pamela Dountas visited Paselk's home several times. Dountas noted that the horses were extremely thin, had lost their hair, and that some were wounded, infected with worms, and were standing in feces in a dark, enclosed area. During her first visit, Dountas did not see any grass on the pasture and could only count eight small square bales of hay to feed the fifty-eight horses. Four subsequent visits revealed no hay and lack of water. Dountas believed the horses had gone hungry for a year and knew the stalls had not been cleaned for six months. She took pictures of the living conditions of Paselk's horses and delivered them to DeAeth.

DeAeth testified Paselk's horses endured "some of the . . . most gross neglect cases of hoof work that I have ever seen," were not wormed, and did not receive adequate dental care. DeAeth claimed Paselk "said things like . . . if God wanted them to have food, they will have food. If God doesn't help her provide food, then they will die. . . . I mean, she said things like that she would go out and just shoot them all and be done with it." Law enforcement was immediately informed of the situation.

Sergeant Tanner Crump went to Paselk's property. Though initially belligerent, she eventually allowed him to examine the horses. Crump also took photographs of the horses and, at the direction of his supervisor, made the decision to seize them. The rescue groups aided Officer Ricky Morgan in the seizure of the horses. Again, it was noted that the horses were "in horrible

4

condition. There was one horse that had passed away . . . there was other horses that couldn't walk . . . . They had bad farrier issues. . . . There were horses that just . . . starved. The horses stood in small, wet pens. There was horses in three feet of manure that was as high as their water barrels, standing in manure, starving, thin." Some horses had no ventilation or daylight. Exhibit pictures demonstrate the water buckets were also full of manure.

The fifteen-year-old male bay horse, Sammie, was approximately 300 pounds underweight, and had rain rot and intestinal parasites. His hooves had not been trimmed "at least in two years," and he was in need of dental care. Veterinarian Richard Garner diagnosed Sammie with conjunctivitis in both eyes.

We conclude that a rational jury could find beyond a reasonable doubt that Paselk intentionally or knowingly failed to provide necessary food, water, medical, and/or dental care for Sammie while he was in Paselk's custody. TEX. PENAL CODE ANN. § 42.09.

Paselk testified on her own behalf and surmised that some of her horses became sick due to toxic dairy runoff from a neighboring property. Because Paselk could not obtain employment and could not sell the property due to environmental issues, she was placed in the difficult situation of having to take care of the horses without income. Paselk admitted that she could not feed the horses "optimally," but justified her actions by telling the jury she received rescue aid and attempted to organize fundraisers. Paselk claimed that her stalls flooded with water and that because she did not want the horses to stand in water or mud, she allowed manure to build up in the

5

stalls to reduce the water flow. Even considering this evidence in a neutral light, we cannot say that the jury's verdict was clearly wrong, manifestly unjust, or against the great weight and preponderance of the evidence.

Because we find the evidence both legally and factually sufficient, we overrule Paselk's first point of error.

## II. Complaints of Unreasonable Seizure Were Not Preserved

Paselk complains that not all of the fifty-eight horses that were seized were in sufficiently poor health to justify their seizure by officials.[2] As closely as we can discern this point, Paselk appears to maintain that the fact that all of the horses were seized tainted the criminal abuse/neglect trial because the jury may have concluded that all the horses were as malnourished and unhealthy as the two horses with which she was charged with neglect or abuse. Paselk attempts to draw some kind of parallel of this case to *Pine v. State*, 921 S.W.2d 866 (Tex. App.—Houston [14th Dist.] 1996, pet. dism'd w.o.j.). One major problem with that attempted parallel is that the *Pine* case involves a civil forfeiture case and is not a criminal proceeding; the question in *Pine* was whether all the horses the subject of those forfeiture proceedings were properly seized for forfeiture. This is a criminal abuse or neglect case and not a property forfeiture case; other than the fact that the *Pine* case also involves abused or neglected equines, it provides no parallels.

---

[2]We observe that Section 42.09(a)(2) of the Texas Penal Code makes it a crime to unreasonably fail "to provide necessary food, water, or care for a livestock animal in the person's custody." TEX. PENAL CODE ANN. § 42.09(a)(2). It does not require that failure to cause the animal to become ill.

Paselk's brief does not demonstrate or allege a complaint regarding the seizure which involves an action taken by the trial court in this criminal case. As a prerequisite to presenting a complaint for our review, Paselk must have made a complaint to the trial court below about the allegedly unreasonable seizure or objections to references to such seizure by a timely request, objection, or motion, which was ruled on by the trial court expressly or implicitly, or which it refused to rule on. TEX. R. APP. P. 33.1.[3] There were neither complaints of unreasonable seizure of the other horses, nor attempts to bar mention of them made to the trial court, and Paselk's motion for new trial makes no reference to this point of error. Because Paselk's complaints were made for the first time on appeal, they were not preserved.

We overrule this point of error.

III. **No Showing of Ineffective Assistance of Counsel**

Last, Paselk argues that counsel was ineffective because he failed to question the qualifications of the State's expert witnesses. Any allegation of ineffectiveness must be firmly founded in the record. *Wallace v. State*, 75 S.W.3d 576, 589 (Tex. App.—Texarkana 2002), *aff'd*, 106 S.W.3d 103 (Tex. Crim. App. 2003); *see Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005); *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). From the record received by this Court, which does not include counsel's reasons for the alleged failures,

---

[3]During pretrial conference, Paselk's counsel said he understood "that there's more than two horses involved in this case even though there was two charges" and that "of course, there's going to be mentioning that there was more than one horse," but asked the State to obtain the court's permission prior to publication of documentation or photographs of any horses other than Lacy and Sammie. This motion in limine was granted and no pictures of other horses were admitted.

Paselk bears the burden of proving that counsel was ineffective by a preponderance of the evidence. *Goodspeed*, 187 S.W.3d at 392; *Thompson*, 9 S.W.3d at 813; *Cannon v. State*, 668 S.W.2d 401, 403 (Tex. Crim. App. 1984). We apply the two-pronged *Strickland* test handed down by the United States Supreme Court to determine whether Paselk received ineffective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668 (1984). Failure to satisfy either prong of the *Strickland* test is fatal. *Ex parte Martinez*, 195 S.W.3d 713, 730 (Tex. Crim. App. 2006).

First, Paselk must show counsel's performance fell below an objective standard of reasonableness when considering prevailing professional norms. *Strickland*, 466 U.S. at 687–88. There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance and that the challenged action could be considered sound trial strategy. *Id.* at 689; *Ex parte White*, 160 S.W.3d 46, 51 (Tex. Crim. App. 2004); *Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000). Therefore, we will not second guess the strategy of Paselk's counsel at trial through hindsight. *Blott v. State*, 588 S.W.2d 588, 592 (Tex. Crim. App. 1979); *Hall v. State*, 161 S.W.3d 142, 152 (Tex. App.—Texarkana 2005, pet. ref'd). In this case, since the record is silent as to why counsel failed to make an objection to the State's expert witnesses, we will assume it was due to any strategic motivation that can be imagined. *Mata v. State*, 226 S.W.3d 425, 431 (Tex. Crim. App. 2007); *Garcia v. State*, 57 S.W.3d 436, 441 (Tex. Crim. App. 2001); *Fox v. State*, 175 S.W.3d 475, 485–86 (Tex. App.—Texarkana 2005, pet. ref'd).

8

We first point out that counsel filed a "Motion for Voir Dire of Expert Witnesses" and moved the trial court "to conduct a hearing prior to trial and outside the presence of the jury to determine the preliminary question of the qualification of all expert witnesses upon which the state intends to rely at trial." While the motion was granted, no voir dire was conducted. Veterinarian Clifton Bradshaw,[4] a veterinarian for twenty years, owned the Lake Country Animal Care Clinic in Mineola. The other expert, Garner, had been a practicing veterinarian for twenty-three years. We may presume that counsel chose not to contest the qualifications of the State's witnesses due to their long history of experience. Paselk cannot demonstrate that her attorney's actions fell below an objective standard of reasonableness.

Further, to meet the second prong of the *Strickland* test, Paselk must show that the deficient performance damaged her defense such that there was a reasonable probability that the result of the trial would have been different. *Mata*, 226 S.W.3d at 429; *Tong*, 25 S.W.3d at 712. A reasonable probability "is a probability sufficient to undermine confidence in the outcome." *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002). DeAeth's and Dountas's testimony, coupled with exhibit pictures and Paselk's own admissions that she could not adequately take care of the horses, demonstrate that Paselk would not be able to meet the second *Strickland* prong.

We overrule Paselk's last point of error.

---

[4]Bradshaw testified about the condition of the female bay horse, which is the subject of Paselk's appeal in cause number 06-09-00215-CR.

9

## IV. Conclusion

We affirm the trial court's judgment.

Bailey C. Moseley
Justice

Date Submitted:     August 4, 2010
Date Decided:       August 5, 2010

Do Not Publish

10